## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Tony Hoyos Hernandez,** individually and
on behalf of all others similarly situated

**Danis Romero,** individually and on behalf
of all others similarly situated

**Greicel Avila Leyva**, individually and on
behalf of all others similarly situated
_**Plaintiff,**_
v.

**KRISTI NOEM, Secretary of the U.S.
Department of Homeland Security,** in her
official capacity, 245 Murray Lane SW,
Washington, DC 20528

**U.S. DEPARTMENT OF HOMELAND
SECURITY,** 245 Murray Lane SW,
Washington, DC 20528;

**U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT,** 500 12th St. SW,
Washington, DC 20536;

**DONALD J. TRUMP,** President of the
United States, in his official capacity, 1600
Pennsylvania Ave. NW, Washington, DC
20220; Defendants.

**ENFORCEMENT AND REMOVAL
OPERATIONS (ERO);** JOHN DOES 1–
1000, in their official and individual
capacities,
_**Defendants.**_

Case: 1:25−cv−02344
Assigned To : Walton, Reggie B.
Assign. Date : 7/21/2025
Description: TRO/Prel. Inj. (D−DECK)

RECEIVED

JUL 2 1 2025

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## INTRODUCTION

Plaintiffs bring this civil action against officials and agents of the United States government

acting under the color of federal law, including the Department of Homeland Security (DHS),

U.S. Immigration and Customs Enforcement (ICE), and U.S. Citizenship and Immigration

Services (USCIS), for repeated violations of black-letter immigration law, due process, and fundamental principles of administrative legality.

Specifically, Plaintiffs were apprehended and processed under section 287 of the Immigration and Nationality Act (INA), 8 U.S.C. § 1357, and thus subjected to mandatory detention under INA § 235(b), 8 U.S.C. § 1225(b). However, ICE unlawfully circumvented this framework by releasing Plaintiffs under INA § 236(a), 8 U.S.C. § 1226(a), via Form I-220A—an act unauthorized by statute for arriving aliens detained without a warrant. This procedural misrepresentation not only contradicted governing law, but also manufactured adverse immigration consequences by denying Plaintiffs the legal status of parolees, which is essential for access to lawful permanent residency and other forms of relief under existing statutory provisions such as the Cuban Adjustment Act.

USCIS has failed to adjudicate Plaintiffs' pending applications for adjustment of status, relying in part on DHS's misclassification of their entry and detention history. Plaintiffs seek declaratory and injunctive relief under the Administrative Procedure Act (APA), 5 U.S.C. §§ 702–706, and the U.S. Constitution, to prevent further unlawful enforcement actions and to correct the record for purposes of lawful adjudication.

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 5 U.S.C. § 702, as the challenged actions are final agency actions for which there is no other adequate remedy in a court, and for which the United States has waived sovereign immunity under the APA.

## JURISDICTION AND VENUE

1. This case arises under the Administrative Procedure Act (APA), 5 U.S.C. § 551 et seq.; the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq., and its implementing regulations; and the United States Constitution, including both the procedural and substantive due process guarantees of the Fifth Amendment.

2.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because the claims arise under the Constitution and laws of the United States. Jurisdiction is also proper under 8 U.S.C. § 1252(e)(3), which grants federal courts authority to hear challenges to the implementation of expedited removal procedures. Because Plaintiffs seek injunctive and declaratory relief—not monetary damages—and challenge unlawful agency action, sovereign immunity is waived under 5 U.S.C. § 702.

3.  Venue is proper in this District under 28 U.S.C. § 1391(e)(1) because Defendants are officers or agencies of the United States acting in their official capacities, are headquartered or reside in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District. See also 8 U.S.C. § 1252(e)(3). The challenged memorandum dated January 23, 2025, and its nationwide implementation, were developed, issued, and directed by officials located at DHS and ICE headquarters in Washington, D.C., making this Court the appropriate venue to review the legality and constitutionality of those actions.

## PARTIES

**Plaintiff**

4.  **Tony Hoyos Hernandez** , individually and on behalf of all others similarly situated, is a noncitizen present in the United States who has been directly impacted by the unlawful immigration enforcement practices described in this Complaint. Plaintiff seeks to represent a class of similarly situated individuals nationwide.

5.  **Danis Romero,** individually and on behalf of all others similarly situated, is a noncitizen present in the United States who has been directly impacted by the unlawful immigration enforcement practices described in this Complaint. Plaintiff seeks to represent a class of similarly situated individuals nationwide.

6.  **Greicel Avila- Leyva**, individually and on behalf of all others similarly situated, is a noncitizen present in the United States who has been directly impacted by the unlawful

immigration enforcement practices described in this Complaint. Plaintiff seeks to represent a class of similarly situated individuals nationwide.

**Defendants**

7.    **KRISTI NOEM,** Secretary of the U.S. Department of Homeland Security, is sued in her official capacity. She is responsible for overseeing all DHS immigration enforcement policies, including the memorandum issued on January 23, 2025, that is the subject of this action. Her official office address is **245 Murray Lane SW, Washington, DC 20528**.

8.    **UNITED STATES DEPARTMENT OF HOMELAND SECURITY (DHS)** is a federal agency headquartered at **245 Murray Lane SW, Washington, DC 20528**. DHS is responsible for the development and execution of federal immigration enforcement policies.

9.    **UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE)** is a component agency of DHS headquartered at **500 12th Street SW, Washington, DC 20536**, and is primarily responsible for carrying out immigration arrests, detentions, and removals challenged in this Complaint.

10.    **DONALD J. TRUMP,** President of the United States, is sued in his official capacity as head of the Executive Branch. As President, he bears ultimate responsibility for directing and authorizing immigration enforcement actions, including policies that result in the unlawful application of expedited removal. His official office address is **1600 Pennsylvania Avenue NW, Washington, DC 20220**.

11.    **ENFORCEMENT AND REMOVAL OPERATIONS (ERO)** is a division within ICE responsible for identifying, arresting, detaining, and removing noncitizens. ERO is headquartered in Washington, D.C., and is directly implementing the challenged practices.

12.    **JOHN DOES 1–1000** are agents, supervisors, and other officials employed by ICE and ERO who participated in or authorized the challenged immigration enforcement actions. They are sued in their **official and individual capacities**. Their identities are presently unknown but will be identified through discovery.

**FACTUAL ALLEGATIONS**

13.     Since early 2025, U.S. Immigration and Customs Enforcement (ICE), acting through its Enforcement and Removal Operations (ERO) division, has initiated a pattern of enforcement practices that unlawfully target noncitizens—particularly Cuban nationals—who are not under active removal authority, not subject to parole supervision, and have remained compliant with all immigration procedures. These actions are being carried out in violation of statutory mandates, agency jurisdictional boundaries, and constitutional guarantees of due process under the Fifth Amendment.

14.     ICE has been coordinating with government attorneys to terminate immigration court proceedings by seeking dismissals or administrative closures without proper notice, hearing, or individualized assessment. In numerous cases, respondents—who have filed affirmative asylum applications (Form I-589), complied with check-in requirements, or are eligible for relief such as lawful permanent residency under the Cuban Adjustment Act—are having their cases abruptly closed inside the courtroom.

15.     Immediately after such dismissals, ICE agents stationed outside the immigration court—often in unmarked vehicles or dressed in plain clothes—apprehend the individual as they exit, sometimes in front of family members, minor children, or legal representatives. The stated justification for these arrests is that the individual must now report to ICE for a "credible fear interview," even though these individuals are not recent entrants, not subject to current expedited removal under 8 U.S.C. § 1225 (INA § 235), and are not in ICE custody, which are all required statutory predicates for initiating a credible fear process under 8 C.F.R. § 208.30.

16.     This practice constitutes a flagrant misuse of the credible fear process. ICE has no authority to override the jurisdiction of U.S. Citizenship and Immigration Services (USCIS) over already-filed affirmative asylum applications, nor to use stale Form I-860s—often issued at initial apprehension and rendered moot by subsequent

compliance—as grounds for renewed removal. Such conduct distorts the statutory scheme, imposes unauthorized procedural hurdles, and deprives applicants of the opportunity to seek protection in accordance with the law.

17.    Moreover, ICE agents are invoking the January 23, 2025 memorandum—intended to address parole discretion cases—as pretext to detain individuals who fall entirely outside its scope. This represents an arbitrary and capricious expansion of internal agency guidance, not grounded in statute or regulation. These enforcement actions appear to be strategically aimed at circumventing the protections of the immigration court process and foreclosing access to statutorily provided relief.

18.    The result is a systemic effort to deprive individuals—who are lawfully present and actively engaged in pursuing immigration benefits—of their right to seek relief such as asylum or permanent residence under the Cuban Adjustment Act. Once an individual initiates a valid application for immigration relief, they acquire a cognizable property interest in the adjudication of that claim. That interest is protected under the Due Process Clause, as recognized in *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

19.    This procedural manipulation is also unlawful under *Coronado Acevedo v. Garland*, 60 F.4th 1339 (11th Cir. 2023), and *Matter of Coronado Acevedo*, 28 I&N Dec. 648 (A.G. 2022), which affirm that noncitizens physically present in the U.S.—even those not admitted—retain statutory rights to seek relief outside of formal removal proceedings. These rights, established under binding provisions of the Immigration and Nationality Act including 8 U.S.C. §§ 1225 and 1357, cannot be lawfully stripped through informal policy or enforcement discretion.

20.    By detaining individuals outside court immediately after dismissing their cases—under false pretenses of initiating credible fear procedures—ICE is engaging in conduct that is arbitrary, discriminatory, and a deliberate effort to deny access to legal

relief. These practices amount to a denial of both procedural and substantive due process, a violation of the INA, and an abuse of agency power that fundamentally undermines the rule of law.

## FACTUAL ALLEGATIONS: TONY HOYOS-HERNANDEZ

21.     Tony Hoyos-Hernandez is a Cuban national who entered the United States near the southern border on or about February 24, 2022. He was apprehended without a warrant by officers of the Department of Homeland Security (DHS) near El Paso, Texas, on March 1, 2022, under the authority of INA § 287(a)(2) [8 U.S.C. § 1357(a)(2)]. Under federal law, he was classified as an "applicant for admission" pursuant to INA § 235(a)(1) [8 U.S.C. § 1225(a)(1)], and thus subject to mandatory detention under INA § 235(b) until the conclusion of his removal proceedings.

22.     However, ICE unlawfully deviated from the mandatory detention scheme by releasing Mr. Hoyos under Form I-220A (Order of Release on Recognizance), invoking an improper classification under INA § 236(a). This documentation and legal basis were incorrect and constitute a misrepresentation of his custody status, because:

- Tony was never granted parole under INA § 212(d)(5)(A);

- Tony was not detained pursuant to a lawful warrant as required under INA § 236(a);

- Tony was not lawfully admitted or inspected, as acknowledged in his Form I-862 (Notice to Appear), making § 236(a) inapplicable.

23.     This misclassification was not a clerical error but a deliberate procedural manipulation by ICE to avoid recognizing Tony's true legal status under § 235(b). As a result, Tony was wrongfully excluded from immigration benefits, including access to adjustment of status under the Cuban Adjustment Act (CAA).

24.     Furthermore, Tony currently has a pending application for lawful permanent residence with USCIS. Yet USCIS has failed to adjudicate that application—based on the misrepresented custody classification generated by ICE—by incorrectly concluding that he was never paroled and therefore not eligible for adjustment. This failure directly violates clear statutory and constitutional protections.

25.     Under established black-letter law:

- Individuals detained under INA § 235(b) may only be released via formal parole under § 212(d)(5)(A) (see *Jennings v. Rodriguez*, 583 U.S. 281, 299–302 (2018); *Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019));

- The Board of Immigration Appeals in *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), reaffirmed that release from § 235(b) detention by DHS constitutes humanitarian parole, regardless of ICE's internal labels.

26.     Since Tony was never issued parole, DHS cannot now claim his release has been "revoked" and use that as a basis for detention. Nevertheless, due to ICE's fabricated paperwork and DHS's failure to correct it, Tony is currently at imminent risk of arbitrary detention and deportation, without meaningful due process protections. As a result:

- He is being unlawfully denied access to immigration relief to which he is statutorily entitled—namely, adjustment of status under the Cuban Adjustment Act;

- He is being deprived of a constitutionally protected property interest in that immigration benefit (see *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976));

- He is suffering ongoing emotional and psychological harm, living under constant fear of unlawful arrest and removal.

27.     In short, Tony Hoyos-Hernandez's case exemplifies the consequences of DHS
and ICE's deliberate misapplication of immigration statutes and their manipulation of
official documentation. These actions violate the Immigration and Nationality Act
(INA), the Administrative Procedure Act (APA), and the Fifth Amendment's guarantees
of due process and property protection, and place Tony at serious and irreparable risk.

28.     Furthermore, Mr. Hoyos-Hernandez is not, and has never been, a participant in
any terminated parole initiative such as CHNV, Uniting for Ukraine (U4U), or
Operation Allies Welcome (OAW). His entry and custody were processed
independently under the statutory inspection procedures of INA § 235(b), and not
pursuant to any discretionary humanitarian parole program. Consequently, DHS and
ICE cannot invoke internal memoranda—such as the Huffman, Higgins, or Davidson
directives—to justify the withholding of benefits or to initiate detention against Mr.
Hoyos-Hernandez. These memoranda are inapplicable to his legal classification and
circumstances.

29.     The Department's attempt to apply parole-based policy frameworks or
discretionary revocation mechanisms to Mr. Hoyos-Hernandez constitutes a clear
overreach of statutory authority. He was never granted parole, and his status as an
"applicant for admission" under § 235(b) carries mandatory legal obligations that ICE
cannot disregard through internal agency fiat.

30.     Accordingly, the government's continued misrepresentation of Mr. Hoyos-
Hernandez's custody status—combined with its invocation of inapplicable policy
justifications—amounts to arbitrary and capricious conduct, in violation of the
Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C), and the Fifth Amendment's
guarantee of due process.

31.     Judicial intervention is necessary to enjoin ICE from applying nonbinding, legally irrelevant policy memoranda to Mr. Hoyos-Hernandez's case, and to ensure that his rights are adjudicated under the controlling provisions of the Immigration and Nationality Act.

## FACTUAL ALLEGATIONS – DANIS ELY ROMERO HERNÁNDEZ

32.     Plaintiff Danis Ely Romero Hernández is a Cuban national who entered the United States on June 17, 2022, near the San Luis, Arizona port of entry. Upon encounter by U.S. immigration authorities, he was detained without a valid warrant of arrest under 8 U.S.C. § 1357 (INA § 287) and without a removal order under 8 U.S.C. § 1231. DHS, through its agents, initiated his custody and processing under INA § 235 (8 U.S.C. § 1225), which governs the inspection and treatment of individuals present without admission at the border.

33.     By law, § 235 mandates that any noncitizen encountered at or near the border without lawful admission be detained for inspection and determination of admissibility, and either kept in custody or paroled under INA § 212(d)(5)(A). The statute does not authorize DHS to reclassify such individuals under INA § 236 (8 U.S.C. § 1226), which governs detention afterlawful entry and arrest within the interior of the country.

34.     Nevertheless, ICE agents released Mr. Romero on an I-220A Order of Release, fraudulently assigning him a detention classification under INA § 236, even though he had never been lawfully admitted nor subject to interior arrest. This misclassification is legally invalid and violates the statutory framework Congress enacted. Such misrepresentation of custody status manipulates immigration records and undermines Mr. Romero's eligibility for lawful benefits conferred by statute.

35.     In particular, Mr. Romero's proper legal classification is that of an "arriving

alien" processed under INA § 235, and his release should have been effectuated, if at

all, under parole authority pursuant to § 212(d)(5)(A). The use of the I-220A form,

which falsely suggests discretionary release under § 236, is an abuse of authority and a

violation of both INA § 235and INA § 287.

36.     This misconduct mirrors the exact scenario condemned in Matter of Q. Li, 28

I&N Dec. 720 (A.G. 2022), where the Attorney General made clear that DHS lacks

authority to reclassify § 235 detainees under § 236 to avoid statutorily mandated

outcomes. Similarly, in Coronado Acevedo v. Garland, 60 F.4th 1339 (11th Cir. 2023),

the court reaffirmed that the government may not sidestep statutory entitlements

through administrative recharacterizations.

37.     Mr. Romero has since filed an application for adjustment of status under the

Cuban Adjustment Act (CAA), a statutory path to lawful permanent residency for

Cuban nationals. However, due to the agency's misrepresentation of his legal custody

status, USCIS has failed to adjudicate his application, effectively obstructing access to a

congressionally mandated benefit. This constitutes a violation of due process under the

Fifth Amendment and denies him a protected property interest, as recognized in

Mathews v. Eldridge, 424 U.S. 319 (1976).

38.     Furthermore, ICE's ongoing reliance on internal memoranda—designed to

regulate parole denials unrelated to Mr. Romero's statutory eligibility—cannot override

binding statutory mandates under INA §§ 235 and 287. These practices amount to

arbitrary and capricious action under the Administrative Procedure Act, 5 U.S.C.

§§ 706(2)(A), (C).

39.     As a direct result of these violations: Mr. Romero is under imminent threat of

arbitrary detention and removal; he has been denied access to parole, residency, and

other legal benefits based on fraudulent documentation; he has suffered emotional and psychological harm, including severe anxiety, fear of detention, and uncertainty about his legal future; his application for lawful permanent residence remains unlawfully stalled by USCIS due to DHS's internal record falsification.

40.     These harms establish violations of: INA § 235 (8 U.S.C. § 1225) and INA § 287 (8 U.S.C. § 1357); APA, 5 U.S.C. § 706(2)(A), (C); Fifth Amendment Due Process Clause; Binding judicial precedent including Matter of Q. Li, Coronado Acevedo, and Mathews v. Eldridge. Mr. Romero's case exemplifies the unlawful manipulation of immigration procedures and the denial of statutory and constitutional protections guaranteed under U.S. law.

41.     Moreover, Mr. Romero Hernández is not and has never been part of any terminated parole programs such as Operation Allies Welcome (OAW), Uniting for Ukraine (U4U), or the CHNV initiative. His entry and processing occurred independently of those initiatives, and therefore, DHS and ICE cannot rely on internal memoranda relating to the suspension or modification of those programs to justify withholding adjudication or initiating detention.

42.     ICE lacks statutory authority to apply parole-related policy terminations or memoranda to Mr. Romero's case, as doing so would constitute an overreach of executive discretion. His legal classification as an "arriving alien" under INA § 235(b) remains intact, and his rights under statutory law must be evaluated accordingly, independent of any internal DHS or ICE directive that lacks the force of law.

43.     As such, ICE's ongoing reliance on internal guidance or discretionary frameworks that do not apply to Mr. Romero's legal circumstances amounts to arbitrary and capricious conduct in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A)–(C), and the Fifth Amendment's guarantee of due process.

44.     Judicial relief is warranted to enjoin ICE from applying any non binding, inapplicable memoranda to Mr. Romero's case and to require adjudication of his status under the controlling statutes enacted by Congress.

## FACTUAL ALLEGATIONS – GREICEL AVILA-LEYVA

45.     Plaintiff Greicel Avila-Leyva is a Cuban national who entered the United States on or about August 25, 2022, near Eagle Pass, Texas, without having been lawfully admitted or paroled, and was immediately placed into removal proceedings under INA § 240. Upon encounter by U.S. immigration authorities, he was detained without a valid judicial warrant as required under INA § 287 (8 U.S.C. § 1357), and without a final removal order under INA § 241 (8 U.S.C. § 1231). DHS agents initiated his processing under INA § 235, which governs individuals arriving at the border without admission.

46.     Despite the applicability of INA § 235, which mandates inspection and custody unless parole is expressly granted under § 212(d)(5)(A), the Department of Homeland Security (DHS), through ICE agents, misclassified Mr. Avila-Leyva under INA § 236, which governs interior enforcement detention and presumes prior lawful admission—a condition that clearly does not apply to his case. This misclassification was formalized via issuance of a Form I-220A (Order of Release on Recognizance) and a custody determination form citing discretionary release under INA § 236, both legally and factually incorrect.

47.     The documents, including the Warrant for Arrest of Alien and Notice to Appear (NTA), confirm that he was arrested at the border and not after any lawful admission. Therefore, his detention and subsequent release could only have been legally executed under INA § 235 and, if applicable, parole under INA § 212(d)(5)(A). The substitution of the lawful custody framework with an I-220A under § 236 not only constitutes a

misrepresentation of his legal status, but also alters his eligibility for statutory immigration benefits, including those under the Cuban Adjustment Act (CAA).

48.     As held in *Matter of Q. Li*, 28 I&N Dec. 720 (A.G. 2022), DHS cannot circumvent statutory mandates by reclassifying individuals improperly. Similarly, the Eleventh Circuit in *Coronado Acevedo v. Garland*, 60 F.4th 1339 (11th Cir. 2023), reaffirmed that the government may not manipulate administrative designations to deny statutory benefits.

49.     Due to this misclassification, Mr. Avila-Leyva has not been paroled into the United States as required for CAA adjustment of status. Instead, he remains in legal limbo, where his application for permanent residence is either denied or indefinitely delayed by USCIS based on a custody status that is patently unlawful and unsupported by statute.

These actions violate his rights under:

- INA § 235 (8 U.S.C. § 1225) and INA § 287 (8 U.S.C. § 1357);
- The Administrative Procedure Act, 5 U.S.C. §§ 706(2)(A) & (C);
- The Fifth Amendment Due Process Clause as interpreted in *Mathews v. Eldridge*, 424 U.S. 319 (1976);
- And binding legal precedent including *Matter of Q. Li* and *Coronado Acevedo*.

As a result of these statutory and constitutional violations, Mr. Avila-Leyva:

- Faces an ongoing threat of detention and removal based on an invalid custody designation;
- Has been denied access to statutory immigration benefits available under CAA;
- Has suffered emotional, psychological, and financial harm due to legal uncertainty and DHS's arbitrary conduct;

- Continues to be subjected to unlawful restrictions and reporting conditions derived from an incorrect application of immigration law.

50.     His case underscores a systemic issue within DHS and ICE involving the fraudulent misapplication of detention authorities to arriving aliens, in violation of Congressional mandates, constitutional protections, and the rule of law.

51.     Moreover, Mr. Avila-Leyva's case is not connected in any way to the parole programs that have been recently terminated, such as Operation Allies Welcome (OAW), Uniting for Ukraine (U4U), or the CHNV parole initiative. He did not enter the United States under any such program and is therefore not subject to the DHS or ICE policies that suspended adjudications related to those initiatives.

52.     Accordingly, ICE lacks any lawful basis to invoke those internal memoranda as justification for detaining him, denying his eligibility, or altering his legal classification. Mr. Avila-Leyva is an "arriving alien" encountered at the border and processed under the authority of INA § 235(b), not INA § 236(a), and his eligibility for lawful status must be evaluated solely under the binding provisions of the Immigration and Nationality Act.

53.     Internal ICE memoranda do not carry the force of law and cannot override statutory mandates or deprive individuals of rights without due process. As the Supreme Court held in *Morton v. Ruiz*, 415 U.S. 199 (1974), agency policy cannot be enforced against individuals unless properly promulgated under law. To apply these nonbinding, discretionary guidelines to Mr.Avila-Leyva—when his case falls entirely outside their scope—is arbitrary, capricious, and unlawful.

54.     These actions violate both the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)–(C), and the Due Process Clause of the Fifth Amendment. Therefore, judicial intervention is necessary to prevent ICE from relying on inapplicable internal

policies to unlawfully detain or deny benefits to Mr. Avila-Leyva. He is entitled to a

court order enjoining ICE from continuing to apply unlawful standards or classifications

to his case.

# 1 CLAIM FOR RELIEF

**Violation of the Administrative Procedure Act (APA) – Contrary to Law and
Arbitrary and Capricious Conduct (Improper Classification of Release and Misuse
of Form I-220A)
(Against All Defendants in their Official Capacities)**

1. Plaintiffs incorporate by reference all preceding paragraphs as though fully set

   forth herein.

2. Under the Administrative Procedure Act, a reviewing court must "hold unlawful

   and set aside agency action" that is "not in accordance with law," "contrary to

   constitutional right," or taken "without observance of procedure required by

   law." 5 U.S.C. § 706(2)(A)-(D).

3. Defendants—through actions taken by DHS, ICE, and subordinate officers—

   have implemented and enforced policies that misclassify recent arrivals under

   INA § 287 and release them under § 236 using Form I-220A, rather than

   following the mandatory statutory procedures outlined in INA § 235.

4. These actions constitute final agency actions reviewable under the APA, as they

   are not tentative or interlocutory, and they carry significant legal consequences.

   *See Bennett v. Spear*, 520 U.S. 154, 178 (1997).

5. Plaintiffs were detained upon entry without warrants, as permitted under INA

   § 287, but were then released using the I-220A form—applicable only under

   INA § 236 detention authority—despite not having been lawfully admitted or

   paroled, and without initiating formal § 240 removal proceedings.

6. This procedural manipulation violates the "black-letter" statutory framework of the INA, especially 8 U.S.C. §§ 1225 (INA § 235) and 1357 (INA § 287), which define the exclusive procedures governing inspection, detention, and release for noncitizens who have not been admitted.

7. Plaintiffs were therefore deprived of the opportunity to seek relief that is only available to parolees, such as lawful permanent residence under the Cuban Adjustment Act or parole-in-place relief, even though their detention status should have been governed by § 235.

8. The misapplication of statutory authority was not based on rulemaking or valid interpretation, but rather on internal ICE practice inconsistent with both the statute and the agency's own regulations—constituting arbitrary, capricious, and unlawful agency conduct under 5 U.S.C. § 706(2)(A)-(C).

9. Moreover, ICE's denial of parole eligibility and misclassification of Plaintiffs' status, without notice or individualized determinations, violates procedural due process rights protected under the Fifth Amendment and contradicts the proper legal standard governing release and relief access.

10. As a result, Plaintiffs are currently exposed to the risk of re-detention and removal without lawful basis or due process, despite having pending immigration applications and no criminal or enforcement history warranting priority detention.

11. Defendants' actions must therefore be declared unlawful, vacated, and enjoined under the APA.

## 2 CLAIM FOR RELIEF

**Violation of the Fifth Amendment – Due Process Clause (Deprivation of Protected Liberty and Property Interests Without Lawful Procedure)**
**(Against All Defendants in their Official Capacities)**

1. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

2. The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person of life, liberty, or property without due process of law.

3. Plaintiffs, although not U.S. citizens, are "persons" within the meaning of the Fifth Amendment and are therefore entitled to its protections.

4. Plaintiffs have liberty and property interests protected under the Constitution and federal immigration statutes, including but not limited to:

    o The right to pursue asylum, parole, or adjustment of status under the Cuban Adjustment Act;

    o The right to have pending immigration applications fairly adjudicated;

    o The right to be detained or released only under lawful statutory authority; and

    o The right to access procedures governed by INA §§ 235 and 236 in accordance with their status.

5. Defendants, through their agencies and officers, have deprived Plaintiffs of these rights by:

    o Misclassifying their detention and release without legal justification or process;

    o Fabricating or manipulating the documents used to govern their custody (e.g., issuing I-220A under INA § 236 despite entry under § 287);

    o Denying access to statutory relief available to parolees and asylum seekers; and

  o Placing Plaintiffs at risk of re-detention and expedited removal without the required legal protections.

6. Defendants failed to provide notice, an opportunity to be heard, or individualized determinations before taking these adverse actions, all of which constitute procedural due process violations.

7. The deprivation of lawful immigration status pathways—based on misclassification or policy-driven obstruction—also constitutes a violation of substantive due process, particularly where government actions are arbitrary, capricious, or designed to frustrate access to congressionally created benefits.

8. As a result, Plaintiffs have suffered and continue to suffer substantial legal harm, emotional distress, and deprivation of lawful status or protections, all without the procedural safeguards required by the Fifth Amendment.

9. Defendants' conduct must therefore be declared unconstitutional and enjoined.

# 3 CLAIM FOR RELIEF

**Ultra Vires Agency Action – Exceeding Statutory Authority Under the INA and the APA**
**(Against All Defendants in their Official Capacities)**

1. Plaintiffs incorporate all preceding allegations as though fully set forth herein.

2. Under the Immigration and Nationality Act (INA), federal immigration agencies may only act within the bounds of authority delegated by Congress.

3. Sections 235 and 287 of the INA (8 U.S.C. §§ 1225 and 1357) define the procedures and limits for arresting, processing, detaining, and releasing noncitizens who are physically present in the United States without lawful admission.

4. Under INA § 235(b), an individual encountered at or near the border must be processed either for expedited removal or detained unless paroled under a lawful statutory exception. INA § 287 further outlines when and how immigration agents may arrest individuals without a warrant.

5. Plaintiffs were detained under § 287 and later released using Form I-220A, a mechanism only available under INA § 236 for individuals already placed in formal removal proceedings—contrary to law and to the facts of their entry.

6. Plaintiffs were never paroled under § 212(d)(5), yet ICE processed them as if they were, or worse, obstructed their eligibility for that status by issuing documentation inconsistent with statutory procedure.

7. These acts represent a deliberate and unauthorized deviation from the statutory scheme set forth in the INA, and are therefore ultra vires—taken **in excess of lawful authority**.

8. The Administrative Procedure Act (APA) mandates that courts "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C).

9. ICE and DHS's creation and application of non-statutory release mechanisms, manipulation of documentation, and suppression of lawful eligibility for Cuban Adjustment Act or asylum status, all fall outside the legal authority granted to the agencies by Congress.

10. Plaintiffs have suffered concrete harm due to these ultra vires actions, including:

    o  Exposure to detention or removal not authorized by law;

    o  Denial of access to lawful immigration benefits;

    o  Emotional, legal, and financial damages arising from the uncertainty and misclassification.

11. The Court should declare these acts unlawful and enjoin Defendants from continuing such unauthorized practices.

# 4 CLAIM FOR RELIEF

**Violation of the Fifth Amendment – Due Process Clause**
**(Deprivation of Protected Liberty and Property Interests Without Lawful Procedure)**
**(Against All Defendants in their Official Capacities)**

1. Plaintiffs incorporate all preceding allegations as though fully set forth herein.

2. The Fifth Amendment to the United States Constitution prohibits the federal government from depriving individuals of liberty or property without due process of law.

3. Plaintiffs, as noncitizens physically present in the United States, possess constitutionally protected liberty interests in remaining free from arbitrary detention and property interests in the adjudication of pending immigration applications, including but not limited to applications for asylum, adjustment of status under the Cuban Adjustment Act, stays of removal, and parole requests.

4. Once an individual files a legally sufficient immigration application, including a Form I-485 or I-589, he or she acquires a cognizable property interest in its adjudication. That interest is entitled to constitutional protection under the Due Process Clause.

5. ICE and DHS officers—acting without statutory authorization or judicial warrants—have engaged in a pattern of detaining or threatening to detain Plaintiffs after manipulating or misclassifying their immigration status and processing documents, including the improper use of I-220A forms where no such statutory basis exists under INA §§ 235 or 287.

6. In many cases, Plaintiffs were apprehended without new charges, removal orders, or individualized assessments, often after full compliance with immigration court hearings or other obligations.

7. ICE has denied or obstructed access to immigration benefits by prematurely terminating proceedings, declining to adjudicate lawful applications, or misrepresenting individuals' statuses, thereby extinguishing their opportunity to pursue statutory relief to which they are legally entitled.

8. These actions have deprived Plaintiffs of both liberty and property interests without notice, meaningful opportunity to be heard, or adherence to lawful procedures—violating the fundamental guarantees of procedural due process.

9. As a result, Plaintiffs have suffered and continue to suffer significant harm, including loss of access to legal relief, threat of detention or removal, emotional trauma, and disruption to family and personal stability.

10. The Court should declare that Defendants' conduct violates the Due Process Clause of the Fifth Amendment and should issue appropriate declaratory and injunctive relief to prevent further unlawful deprivation of liberty and property interests.

# 5 CLAIM FOR RELIEF

**Violation of the Fifth Amendment – Due Process Clause**
**(Deprivation of Protected Liberty and Property Interests Without Lawful Procedure)**
**(Against All Defendants in their Official Capacities)**

1. Plaintiffs incorporate all preceding allegations as though fully set forth herein.

2. The Fifth Amendment to the United States Constitution prohibits the federal government from depriving individuals of liberty or property without due process of law.

3. Plaintiffs, as noncitizens physically present in the United States, possess constitutionally protected liberty interests in remaining free from arbitrary detention and property interests in the adjudication of pending immigration applications, including but not limited to applications for asylum, adjustment of status under the Cuban Adjustment Act, stays of removal, and parole requests.

4. Once an individual files a legally sufficient immigration application, including a Form I-485 or I-589, he or she acquires a cognizable property interest in its adjudication. That interest is entitled to constitutional protection under the Due Process Clause.

5. ICE and DHS officers—acting without statutory authorization or judicial warrants—have engaged in a pattern of detaining or threatening to detain Plaintiffs after manipulating or misclassifying their immigration status and processing documents, including the improper use of I-220A forms where no such statutory basis exists under INA §§ 235 or 287.

6. In many cases, Plaintiffs were apprehended without new charges, removal orders, or individualized assessments, often after full compliance with immigration court hearings or other obligations.

7. ICE has denied or obstructed access to immigration benefits by prematurely terminating proceedings, declining to adjudicate lawful applications, or misrepresenting individuals' statuses, thereby extinguishing their opportunity to pursue statutory relief to which they are legally entitled.

8. These actions have deprived Plaintiffs of both liberty and property interests without notice, meaningful opportunity to be heard, or adherence to lawful procedures—violating the fundamental guarantees of procedural due process.

9. As a result, Plaintiffs have suffered and continue to suffer significant harm, including loss of access to legal relief, threat of detention or removal, emotional trauma, and disruption to family and personal stability.

10. The Court should declare that Defendants' conduct violates the Due Process Clause of the Fifth Amendment and should issue appropriate declaratory and injunctive relief to prevent further unlawful deprivation of liberty and property interests.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

1. Issue a preliminary and/or permanent injunction under 5 U.S.C. § 705, enjoining Defendants from re-detaining the Plaintiffs based on fabricated or misclassified immigration statuses, and preserving Plaintiffs' right to seek lawful permanent residency under the Cuban Adjustment Act (CAA), 8 U.S.C. § 1255, during the pendency of this litigation;

   *Such relief is necessary because any detention of Plaintiffs under these circumstances would constitute irreparable harm, depriving them of access to statutory immigration protections, causing severe psychological and emotional distress, and subjecting them to the risk of summary removal without lawful due process, in direct violation of their constitutional rights under the Fifth Amendment.*

2. Declare that Plaintiffs were initially processed and released under the statutory authority of 8 U.S.C. §§ 1225 and 1357, and that their subsequent classification under 8 U.S.C. § 1226 via I-220A documentation was unlawful, procedurally improper, and contrary to statutory mandates;

3. Declare that Defendants' systematic misrepresentation of Plaintiffs' immigration status, and their refusal to recognize Plaintiffs' eligibility for adjustment under the Cuban Adjustment Act, violates the Administrative Procedure Act (APA), the Due Process Clause of the Fifth Amendment, and binding statutory provisions of the INA;

4. Declare that Plaintiffs possess a protected legal interest in seeking adjustment of status under the Cuban Adjustment Act, and that the Defendants' arbitrary processing practices unlawfully deprive them of that interest without due process;

5. Hold unlawful, set aside, and vacate all agency actions taken by ICE and DHS that misclassify Plaintiffs' immigration status, obstruct or indefinitely delay adjudication of CAA-based applications, or seek to detain or remove Plaintiffs despite their statutory eligibility for relief;

6. Enjoin Defendants from taking any enforcement action based on Plaintiffs' I-220A designations, including arrest, detention, removal, or denial of adjustment, unless such actions are supported by valid legal determinations under the proper statutory authority;

7. Order that Plaintiffs' applications for adjustment of status be adjudicated on the merits, consistent with all applicable statutory and constitutional protections, and without regard to improper classifications, unpublished internal policies, or fraudulent documentation.

**Respectfully submitted,**                              **Dated:** June 23, 2025



**Tony Hoyos Hernandez**

3129 W 72 Terra

Hialeah, Florida 33018

786-835-3240

tony.hoyos8789@gmail.com



**Danis Ely Romero Hernández**

3 Hemlock Radial Pass Unit 1

Ocala, Florida 34472

352-890-4356

danisely26@gmail.com

**Greicel Avila Leyva**

1961 Golden Gate Blvd E

Naples, FL 34120

239-784-3389

avilagreicel@gmail.com