UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TONY HOYOS HERNANDEZ, et al.,

        Plaintiffs,

        v.

KRISTI NOEM,
Secretary of Homeland Security, et al.,

        Defendants.

Civil Action No. 25-2344 (RBW)

**DEFENDANTS' COMBINED MOTION TO DISMISS AND MEMORANDUM IN
SUPPORT THEREOF AND OPPOSITION TO PLAINTIFFS' MOTION FOR
<u>TEMPRORARY RESTRAINING ORDER</u>**

# TABLE OF CONTENTS

Table of Contents .................................................................................................... ii

Table of Authorities ............................................................................................... iv

Background ............................................................................................................. 2

    I.    Plaintiffs' Immigration Proceedings ........................................................ 2

    II.   This Litigation ......................................................................................... 3

Standard of Review ................................................................................................. 5

    I.    Dismissal Under Rule 12(b)(1) ............................................................... 5

    II.   Dismissal Pursuant to Rule 12(b)(6) ....................................................... 6

    III.  Application of the Pleading Rules to Pro Se Plaintiffs ............................ 7

    IV.  Preliminary Injunctive Relief .................................................................. 7

Argument ................................................................................................................ 8

    I.    Plaintiffs' Amended Complaint Should Be Dismissed in Its Entirety .... 8

            A.   Statutory Background ............................................................... 9

            B.   The Court Lacks Jurisdiction Over Plaintiffs' Claims and to Grant the Relief Plaintiffs Seek ................................................ 15

            C.   Judicial Review Is Unavailable Under the APA ...................... 20

            D.   Plaintiffs Lack Standing for Their APA Claims as They Cannot Demonstrate Redressability ......................................... 21

            E.   Plaintiffs Fail to State a Claim Because They Are Not Entitled to the Discretionary Grant of Humanitarian Parole as a Matter of Right. ......... 23

            F.   Plaintiffs Have Not Stated Claims for Fifth Amendment Due Process Violations .............................................................. 25

    II.   Plaintiffs' Motion for Temporary Restraining Order Should Be Denied ............ 26

            A.   Plaintiffs Will Not Suffer Imminent Irreparable Harm In The Absence Of Injunctive Relief ............................................ 26

            B.   Plaintiffs' Motion Does Not Demonstrate That They Will Succeed on the Merits ............................................................. 31

C.    The Public Interest and the Equities Strongly Favor Defendants ............. 31

D.    Plaintiffs Should Be Ordered to Post Security In Connection With Any Temporary Injunctive Relief. ................................................................... 32

Conclusion ........................................................................................................................ 33

# TABLE OF AUTHORITIES

**Cases**

*Abdullah v. Obama*,
   753 F.3d 193 (D.C. Cir. 2014) ............................................................ 26

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................... 6

*Battineni v. Jaddou*,
   Civ. A. No. 24-0302 (CRC), 2025 WL 579814 (D.D.C. Feb. 21, 2025) ......... 18-19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................... 6

*Biovail Corp. v. FDA*,
   448 F. Supp. 2d 154 (D.D.C. 2006) ............................................... 29, 30

*Brown v. District of Columbia*,
   514 F.3d 1279 (D.C. Cir. 2008) .......................................................... 6

*Budik v. Dartmouth-Hitchcock Med. Ctr.*,
   937 F. Supp. 2d 5 (D.D.C.2013) .......................................................... 7

*Carroll v. Off. of Fed. Contract Compliance Programs*,
   235 F. Supp. 3d 79 (D.D.C. 2017) ..................................................... 26

*Chaplaincy of Full Gospel Churches v. England*,
   454 F.3d 290 (D.C. Cir. 2006) ..................................................... 8, 27

*Chen v. Rodriguez*,
   200 F. Supp. 3d 174 (D.D.C. 2016) ................................................... 16

*CityFed Fin. Corp. v. Off. of Thrift Supervision*,
   58 F.3d 738 (D.C. Cir. 1995) ........................................................... 27

*Clayton v. District of Columbia*,
   931 F. Supp. 2d 192 (D.D.C. 2013) ................................................. 5-6

*Colo. Wild Horse v. Jewell*,
   130 F. Supp. 3d 205 (D.D.C. 2015) ................................................... 31

*Commodity Futures Trading Comm'n v. Nahas*,
   738 F.2d 487 (D.C. Cir. 1984) ........................................................... 5

*Connecticut v. Dep't of Interior*,
   344 F. Supp. 3d 279 (D.D.C. 2018) ................................................... 26

*Crisafi v. Holland*,
   655 F.2d 1305 (D.C. Cir. 1981) .......................................................... 7

*Cruz-Miguel v. Holder*,
    650 F.3d 189 (2d Cir. 2011) ................................................................ 11, 24

*Curran v. Holder*,
    626 F. Supp. 2d 30 (D.D.C. 2009) ............................................................ 5

*Damus v. Nielsen*,
    Civ. A. No. 18-0578 (JEB), 2018 WL 3232515 (D.D.C. July 2, 2018) ................................. 8

*Davis v. Pension Benefit Guar. Corp.*,
    571 F.3d 1288 (D.C. Cir. 2009) ............................................................. 8

*Delgado-Sobalvarro v. Attorney General*,
    625 F.3d 782 (3d Cir. 2010) ............................................................ 13, 24

*Department of State v. Muñoz*,
    602 U.S. 899 (2024) ................................................................ 25-26, 26

*Doe v. Mattis*,
    889 F.3d 745 (D.C. Cir. 2018) ............................................................. 27

*DSE, Inc. v. United States*,
    169 F.3d 21 (D.C. Cir. 1999) .............................................................. 32

*Dep't of Homeland Sec. v. Thuraissigiam*,
    591 U.S. 103 (2020) ..................................................................... 25

*Erickson v. Pardus*,
    551 U.S. 89 (2007) (per curiam) ........................................................... 7

*Florida v. United States*,
    660 F. Supp. 3d 1239 (N.D. Fla. 2023) ................................................... 13-14

*Fund for Animals v. Frizzell*,
    530 F.2d 982 (D.C. Cir. 1975) ............................................................. 28

*Green v. Stuyvesant*,
    505 F. Supp. 2d 176 (D.D.C. 2007) ......................................................... 7

*Gustave-Schmidt v. Chao*,
    226 F. Supp. 2d 191 (D.D.C. 2002) ......................................................... 7

*Haines v. Kerner*,
    404 U.S. 519 (1972) ...................................................................... 7

*Hubbard v. United States*,
    496 F. Supp.2d 194 (D.D.C. 2007) ......................................................... 32

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018) ............................................................. 9, 10, 11, 23

*Khalil v. President*,
   No. 25-2162, 2026 WL 111933 (3d Cir. Jan. 15, 2026) ................................. 16, 17

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) .................................................................................... 5

*League of Women Voters v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016) ....................................................................... 8

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .................................................................................. 21

*Martinez Mayorga v. Meade*,
   Civ. A. No. 24-22131, 2024 WL 4298815, 2024 U.S. Dist. LEXIS 174421 ........................ 19

*Matter of Adeniji*,
   22 I&N Dec. 1102 (B.I.A. 1999) .............................................................. 12

*Matter of Cabrera-Fernandez*,
   28 I&N Dec. 747 (B.I.A. 2023) ........................................................... 12, 13

*Matter of D.J.*,
   23 I&N Dec. 572 ....................................................................................... 13

*Matter of E.R.M.*,
   25 I&N Dec. 520 ......................................................................................... 9

*Matter of Garcia-Garcia*,
   25 I&N Dec. 93 (B.I.A. 2009) ................................................................. 13

*Matter of Guerra*,
   24 I&N Dec. 37 (B.I.A. 2006) ................................................................. 12

*Matter of Q. Li*,
   29 I&N Dec. 66 (BIA 2025) ................................................................. 10, 13

*Matter of R.A.V.P.*,
   27 I&N Dec. 803 (B.I.A. 2020) ............................................................... 13

*McNeil v. United States*,
   508 U.S. 106 (1993) .................................................................................. 7

*Mdewakanton Sioux Indians of Minn. v. Zinke*,
   264 F. Supp. 3d 116 (D.D.C. 2017) ...................................................... 26

*Meza v. Renaud*,
   9 F.4th 930 (D.C. Cir. 2021) ................................................................... 18

*Missouri v. Jenkins*,
   495 U.S. 33 (1990) .................................................................................. 22

*Moore v. Motz,*
    437 F. Supp. 2d 88 (D.D.C. 2006) ....................................................... 7

*Mylan Pharms., Inc. v. Shalala,*
    81 F. Supp. 2d 30 (D.D.C. 2000) ................................................... 28-29

*N.Y. Times Co. v. Def. Health Agency,*
    Civ. A. No. 21-0566 (BAH), 2021 WL 1614817 (D.D.C. Apr. 25, 2021) ........... 30

*Nat'l Parks Conservation Ass'n v. U.S. Forest Serv.,*
    Civ. A. No. 15-1582 (APM), 2016 WL 420470 (D.D.C. Jan. 22, 2016) ............ 27

*Newdow v. Bush,*
    355 F. Supp. 2d 265 (D.D.C. 2005) .................................................. 28

*Nken v. Holder,*
    556 U.S. 418 (2009) ................................................................ 31

Notably, in *Alonso-Escobar v. USCIS Field Office Direcotr,*
    462 F. App'x 933, 934-935 (11th Cir. 2012) ........................................ 19

*Open Top Sightseeing USA v. Mr. Sightseeing, LCC,*
    48 F. Supp. 3d 87 (D.D.C. 2014) .................................................... 28

*Ortega-Cervantes v. Gonzales,*
    501 F.3d 1111 (9th Cir. 2007) ...................................................... 24

*Oryszak v. Sullivan,*
    576 F.3d 522 (D.C. Cir. 2009) ...................................................... 20

*Papasan v. Allain,*
    478 U.S. 265 (1986) ................................................................. 6

*PETA v. Fish & Wildlife Serv.,*
    59 F. Supp. 3d 91 (D.D.C. 2014) .................................................... 26

*Pursuing Am.'s Greatness v. Fed. Election Comm'n,*
    831 F.3d 500 (D.C. Cir. 2016) ...................................................... 31

*Rann v. Chao,*
    154 F. Supp. 2d 61 (D.D.C. 2001) ................................................... 6

*Reno v. Flores,*
    507 U.S. 292 (1993) ................................................................ 12

*Romero v. Garland,*
    999 F.3d 656 (9th Cir. 2021) ................................................ 19, 20-21

*Roman Catholic Archdiocese of San Juan*, ,
    589 U.S. 57 (2020) ................................................................. 22

*Sturdza v. United Arab Emirates*,
  658 F. Supp. 2d 135 (D.D.C. 2009) ............................................................. 7

*Samirah v. O'Connell*,
  335 F.3d 545 (7th Cir. 2003) ..................................................................... 19

*Sampson v. Murray*,
  415 U.S. 61 (1974) ...................................................................................... 31

*Scenic Am., Inc. v. Dep't of Transp.*,
  836 F.3d 42 (D.C. Cir. 2016) ...................................................................... 21

*Serono Labs., Inc. v. Shalala*,
  158 F.3d 1313 (D.C. Cir. 1998) .................................................................. 32

*Sherley v. Sebelius*,
  644 F.3d 388 (D.C. Cir. 2011) ...................................................................... 8

*Stilwell v. Off. of Thrift Supervision*,
  569 F.3d 514 (D.C. Cir. 2009) .................................................................... 21

*Texas All. for Home Care Servs. v. Sebelius*,
  681 F.3d 402 (D.C. Cir. 2012) .................................................................... 20

*United States ex rel.* Knauff *v. Shaughnessy*,
  338 U.S. 597 (1950) .................................................................................... 25

*United States v. Daniels*,
  902 F.2d 1238 (7th Cir. 1990) .................................................................... 22

United States." *Castillo-Padilla v. Att'y Gen.*,
  417 F. App'x 888 (11th Cir. 2011) ............................................. 13, 11-12, 23, 24

*Weinberger v. Romero-Barcelo*,
  456 U.S. 305 (1982) .................................................................................... 31

*Winter v. Nat. Res. Def. Council*,
  555 U.S. 7 (2008) ............................................................................. 7, 26, 32

*Wis. Gas Co. v. Fed. Energy Regul. Comm'n*,
  758 F.2d 669 (D.C. Cir. 1985) (per curiam) (cleaned up) ................... 26, 27, 28, 30

## Statutes & Regulations

5 U.S.C. § 701 ................................................................................................ 20

8 U. S. C. § 1182 ........................................................................................... 10

8 U.S.C. § 1182 ............................................................. 18, 2, 3, 4, 11, 15, 18, 20, 22

8 U.S.C. § 1182 . 1st ........................................................................................ 3

8 U.S.C. § 1225 ............................................................................... 9, 3, 9, 10, 13

8 U.S.C. § 1225. 1st ........................................................................................ 3

8 U.S.C. § 1226 ................................................................. 13, 2, 3, 11, 13, 15, 18, 22

8 U.S.C. § 1226, to ....................................................................................... 13

8 U.S.C. § 1229a ................................. 9, 2, 3, 5, 9, 10, 14, 15, 17, 18, 24, 25

8 U.S.C. § 1252 ............................................................... 15, 16, 17, 18, 19, 20

8 U.S.C. § 1255 ......................................................................... 14, 20, 24

28 U.S.C. § 1361. ........................................................................................ 4

8 C.F.R. § 212.5 ......................................................................................... 18

8 C.F.R. § 236.1 ......................................................................................... 12

8 C.F.R. § 245.2 ......................................................................................... 14

8 CFR §§ 212.5, 235.3 ............................................................................... 10

Defendants, the Secretary of Homeland Security ("Secretary"), the Department of Homeland Security (the "Department" or "DHS"), Immigration and Customs Enforcement ("ICE"), and United States Citizenship and Immigration Services ("USCIS") (collectively, "Defendants"),[1] by and through undersigned counsel, respectfully move to dismiss the First Amended Complaint (ECF No. 17) filed by pro se Plaintiffs Tony Hoyos Hernandez, Danis Ely Romero Hernandez, and Greicel Avila Leyva (collectively, "Plaintiffs") and oppose Plaintiffs' motion for temporary restraining order (ECF No. 18).[2] As explained below, this Court does not have jurisdiction over Plaintiffs' claims. Plaintiffs also have not demonstrated that they are at imminent risk of irreparable harm, that they are likely to succeed on the merits, or that the balance of the equities is in their favor. As a result, their request for a temporary restraining order should be denied.[3]

---

[1]    Plaintiffs' First Amended Complaint appears to remove the President of the United States and Enforcement and Removal Operations ("ERO") John Does 1-1000, in their official and individual capacities, as defendants from this action. Both the President and John Does were listed as defendants in the original complaint.

[2]    Defendants also respectfully submit herewith the Declaration of Daniel Vanderploeg regarding Plaintiff Romero Hernandez ("Romero Hernandez Decl.") and the Declaration of Richard Lall regarding Plaintiff Avila Leyva ("Avila Leyva Decl.") and the Declaration of Richard Lall regarding Plaintiff Hoyos Hernandez ("Hoyos Hernandez Decl.") in support of their motion and opposition. These Declarations reflect the status of each Plaintiff's case as of the day the declaration was executed. The exhibits to the Declarations (i.e., the I-200 arrest warrants for Plaintiffs) are properly incorporated by reference because each Plaintiff alleges that he "no[t] arrested pursuant to a warrant following admission." Am. Compl. (ECF No. 17) at 8.

[3]    The complaint does not contain sequentially numbered paragraphs. As a result, Defendants cite to the CM/ECF numbers in the upper-right-hand corner of the pages.

## BACKGROUND[4]

### I.    <u>Plaintiffs' Immigration Proceedings</u>

Plaintiffs are all Cuban nationals who lack valid documents to enter or remain in the United States.   Plaintiffs all entered the United States without inspection in 2022 and were detained near the southern border within days of entry.  Hoyos Hernandez Decl. ¶ 4; Avila Leyva Decl. ¶¶ 3-4; Romero Hernandez Decl. ¶¶ 4-5.

Plaintiffs were each processed by Customs and Border Protection ("CBP") for removal proceedings before an Immigration Judge under section 240 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229a ("240 Proceedings") and were released on "conditional parole" under INA § 236(a)(2)(B), 8 U.S.C. § 1226(a)(2)(B).  Hoyos Hernandez Decl. ¶ 4; Avila Leyva Decl. ¶ 4; Romero Hernandez Decl. ¶ 5.  No Plaintiff has been paroled pursuant to INA § 212(d)(5), 8 U.S.C. § 1182(d)(5), sometimes referred to as "humanitarian parole."  Hoyos Hernandez Decl. ¶ 8; Avila Leyva Decl. ¶ 9; Romero Hernandez Decl. ¶ 6.

Hoyos Hernandez remains non-detained and in removal proceedings in Miami, Florida. Hoyos Hernandez Decl. ¶¶ 5, 7.   An immigration judge in Miami, Florida, denied Hoyos Hernandez's motion to terminate the proceedings, and the next hearing date is in November 2027. *Id.* ¶ 7.

An immigration judge in Miami, Florida, denied Avila Leyva's motion to terminate proceedings to adjust his status pursuant to the Cuban Adjustment Act on June 16, 2025.  Avila Leyva Decl. ¶ 7.  Avila Leyva has a pending Cuban Adjustment Act application with United States

---

[4]    Unless otherwise noted, the following alleged facts drawn from the Complaint are accepted as true solely for the purposes of this motion.

Citizenship and Immigration Service ("USCIS").  *Id.*  Avila Leyva remains non-detained and in 240 Proceedings in Miami, Florida, with a master calendar hearing in March 2026.  Decl. ¶¶ 5-6.

Romero Hernandez remains non-detained and in removal proceedings in Orlando, Florida. Romero Hernandez Decl. ¶ 7.  The next scheduled Master Calendar hearing for Romero Hernandez is February 17, 2026.  *Id*.

## II.    **This Litigation**

On July 21, 2025, Plaintiffs initiated this lawsuit.  Compl. (ECF No. 1).  On August 29, 2025, Defendants filed their combined motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction.  Def's Mot. & Opp'n (ECF Nos. 10, 11).  On September 26, 2025, Plaintiffs filed their combined opposition to Defendants' motion to dismiss and reply in support of their motion for preliminary injunction.  Pls' Opp'n & Reply (ECF No. 12).  Before Defendants filed their reply in support of their motion to dismiss, Plaintiffs amended their complaint, First Am. Compl. (ECF No. 17) and moved for a temporary restraining order (ECF No. 18).

As with their original complaint, the First Amended Complaint alleges that Plaintiffs each should have been classified as an "arriving alien" and processed under INA § 235, 8 U.S.C. § 1225, and their releases should have been effectuated, if at all, under parole authority pursuant to INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A). 1st Am. Compl. (ECF No. 17) at 1-3.  Plaintiffs allege that they were not eligible for conditional release pursuant to INA § 236, 8 U.S.C. § 1226, because they were not arrested pursuant to warrants and, therefore, the use of the I-220A form in connection with their release was a violation of 8 U.S.C. § 1225.  1st Am. Compl. (ECF No. 17) at 1-3, 5, 9-10. Plaintiffs allege further that, because their release was "misclassified" as being under 8 U.S.C. § 1226 rather than 8 U.S.C. § 1182(d)(5)(A), they are being deprived of the opportunity to adjust their status under the Cuban Adjustment Act.  1st Am. Compl. (ECF No. 17) at 9-12.

Plaintiffs' First Amended Complaint purports to state five claims.  The first claim for relief is styled as a request for mandamus pursuant to the Mandamus Act, 28 U.S.C. § 1361.  1st Am. Compl. (ECF No. 17) at 12-14.  Specifically, Plaintiffs allege that DHS had a nondiscretionary duty to perform a parole evaluation pursuant to INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A), and Plaintiffs seek a writ of mandamus ordering Defendants "to perform the required ministerial duty and issue the documentation mandated by INA § 235(b) and INA § 212(d)(5)(A)."  1st Am. Compl. (ECF No. 17) at 12-14.

The second claim for relief alleges that Defendants violated section 706(1) of the Administrative Procedure Act ("APA") by failing to conduct a parole determination under INA § 235(b) and § 212(d)(5)(A) at the time of each Plaintiff's initial encounter and by failing document that parole determination "as part of the required release process for applicants for admission."  1st Am. Compl. (ECF No. 17) at 14.

The third claim for relief alleges that Defendants violated section 706(2)(C) of the APA by processing Plaintiffs under INA § 236(a), as opposed to INA § 235(b), when Plaintiffs were at or near the U.S. border.  1st Am. Compl. (ECF No. 17) at 15.

The fourth claim for relief alleges that Defendants violated section 706(2)(A) of the APA because their actions—not processing Plaintiffs under INA § 235(b), relying on subsequently issued warrants to process Plaintiffs under INA § 236, and not conducting a parole determination pursuant to INA § 212(d)(5)(A)—were contrary to law and arbitrary and capricious. 1st Am. Compl. (ECF No. 17) at 15-16.

The fifth claim for relief alleges that Defendants violated Plaintiffs' Fifth Amendment right to due process.  1st Am. Compl. (ECF No. 17) at 16-17.  Specifically, Plaintiffs allege that Defendants have deprived them of liberty and property interests without due process of law "by

misclassifying Plaintiffs, bypassing mandatory statutory procedures, and issuing documentation inconsistent with the statutory requirements for applicants for admission." *Id.*

Finally, Plaintiffs filed a motion for temporary restraining order. Pls' Mot. (ECF No. 18). The motion, which is only seven pages and does not include any supporting affidavits, reiterates the allegations and legal conclusions contained in the complaint, and asserts that Plaintiffs are suffering irreparable harm because "[t]he unlawful classification under § 236(a) exposes Plaintiffs to: arrest as 'noncompliant,' detention without parole review, [and] removal proceedings based on void records." Pls' Mot. (ECF No. 18) at 4. Plaintiffs also argue generally that they are exposed to "ongoing deprivation of statutory rights" and "[d]ue process [constitutional] violations are always irreparable harm." *Id.*

## STANDARD OF REVIEW

### I.    <u>Dismissal Under Rule 12(b)(1)</u>

Federal Rule of Civil Procedure ("Rule") 12(b)(1) requires dismissal of claims where the Court "lack[s] jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). "Rule 12(b)(1) presents a threshold challenge to the Court's jurisdiction . . . [and] the Court is obligated to determine whether it has subject-matter jurisdiction in the first instance." *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (internal citation and quotation marks omitted). "A federal court presumptively lacks jurisdiction in a proceeding until a party demonstrates that jurisdiction exists." *Commodity Futures Trading Comm'n v. Nahas,* 738 F.2d 487, 492 n.9 (D.C. Cir. 1984) (emphasis added); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("[I]t is presumed that a cause lies outside [the federal courts'] limited jurisdiction."). "If sovereign immunity has not been waived, a claim is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction." *Clayton v. District of Columbia*, 931 F. Supp. 2d 192, 200 (D.D.C. 2013) (citing

*FDIC v. Meyer,* 510 U.S. 471, 475 (1994)).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

The Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff, *Brown v. District of Columbia,* 514 F.3d 1279, 1283 (D.C. Cir. 2008), but it need not "accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations[,]" *Rann v. Chao,* 154 F. Supp. 2d 61, 64 (D.D.C. 2001).

## II.    Dismissal Pursuant to Rule 12(b)(6)

Under Rule 12(b)(6), the Court may dismiss a Complaint where a plaintiff fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When resolving a motion to dismiss pursuant to Rule 12(b)(6), the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff.  *See Iqbal*, 556 U.S. at 678.  However, a court is not required to accept conclusory allegations or unwarranted factual deductions as true.  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.  Likewise, a court need not "accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Ultimately, the focus is on the language in the complaint and whether that sets forth sufficient factual allegations to support a plaintiff's claims for relief.

In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice."

*Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997)).

## III.    <u>Application of the Pleading Rules to Pro Se Plaintiffs</u>

The pleadings of pro se parties are to be "liberally construed," and a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal citations and quotation marks omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). "This benefit is not, however, a license to ignore the" Rules. *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009) (citation omitted); *McNeil v. United States*, 508 U.S. 106, 113 (1993). This means that even a pro se plaintiff must meet his burden of proving subject matter jurisdiction to survive a Rule 12(b)(1) motion to dismiss. *See, e.g.*, *Green v. Stuyvesant*, 505 F. Supp. 2d 176, 177 (D.D.C. 2007) (dismissing complaint where pro se plaintiff failed to prove subject matter jurisdiction). Likewise, although a pro se complaint "must be construed liberally, the complaint must still 'present a claim on which the Court can grant relief'" to withstand a Rule 12(b)(6) challenge. *Budik v. Dartmouth-Hitchcock Med. Ctr.*, 937 F. Supp. 2d 5, 11 (D.D.C.2013) (citation omitted)); *Moore v. Motz*, 437 F. Supp. 2d 88, 90 (D.D.C. 2006) (noting that "[e]ven a pro se plaintiff's inferences . . . need not be accepted" if they "are unsupported by the facts set out in the complaint" (citation omitted)); *see also Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981) (noting that a pro se complaint must state a claim upon which relief can be granted).

## IV.    <u>Preliminary Injunctive Relief</u>

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). A party seeking preliminary relief must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and

accord with the public interest." *League of Women Voters v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016). The movant bears the burden of persuasion to show that the requested relief is due. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

Before the Supreme Court's decision in *Winter*, courts weighed these factors on a "sliding scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker showing on another. *Damus v. Nielsen*, Civ. A. No. 18-0578 (JEB), 2018 WL 3232515, at *4 (D.D.C. July 2, 2018) (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009)). This Circuit has suggested, though not held, that *Winter*—which overturned the Ninth Circuit's "possibility of irreparable harm" standard—establishes that "likelihood of irreparable harm" and "likelihood of success" are "independent, free-standing requirement[s]." *Sherley v. Sebelius*, 644 F.3d 388, 392-93 (D.C. Cir. 2011); *see also League of Women Voters*, 838 F.3d at 7 (declining to address whether "sliding scale" approach is valid after *Winter*).

**ARGUMENT**

Plaintiffs' Amended Complaint should be dismissed and their motion for injunctive relief should be denied. This Court does not have jurisdiction over Plaintiffs' claims, and Plaintiffs have failed to state any claim upon which relief can be granted. Plaintiffs also have not demonstrated that they risk imminent irreparable harm or that they are likely to succeed on the merits of their claims. Moreover, the balance of interests, which considered the broader public interest in making the determinations that Plaintiffs seek to challenge, is firmly in favor of Defendants.

## I. <u>Plaintiffs' Amended Complaint Should Be Dismissed in Its Entirety</u>

This case is effectively a challenge to the Department's decisions regarding whether and how to initiate removal proceedings and whether to parole (release) a noncitizen during the pendency of those proceedings. As explained below, however, the Court does not have jurisdiction to review the decisions challenged in these cases. In addition, Plaintiffs have not stated claims

upon which relief can be granted under any theory.  As such, their amended complaint should be dismissed.

### A.    Statutory Background

#### 1.    Applicants for admission under 8 U.S.C. § 1225(a)(1)

According to section 1225(a)(1), a noncitizen "present in the United States who has not been admitted . . . shall be deemed for purposes of this chapter an applicant for admission." The same statutory provision also treats as an "applicant for admission" any noncitizen "who arrives in the United States (whether or not at a designated port of arrival and including [a noncitizen] who is brought to the United States after having been interdicted in international or United States waters)." *Id.*   Noncitizens who are present without admission or parole, as applicants for admission, may be removed from the United States through, among other processes, expedited removal under INA § 235(b)(1), 8 U.S.C. § 1225(b)(1), or removal proceedings before an Immigration Judge under INA § 240, 8 U.S.C. § 1229a. *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (describing how "applicants for admission fall into one of two categories, those covered by [INA § 235(b)(1)] and those covered by [INA § 235(b)(2)]").[5]   Immigration officers have discretion to apply expedited removal under INA § 235, 8 U.S.C. § 1225, or to initiate removal proceedings before an Immigration Judge under INA § 240, 8 U.S.C. § 1229a. *Matter of E.R.M.*, 25 I&N Dec. 520, 523-24 (B.I.A. 2011) (remarking that much like the prosecutorial discretion afforded the Executive in criminal prosecutions, so too should prosecutorial discretion apply to the Department and concluding that it is within the Department's unreviewable discretion whether to

---

[5]    "Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2).

apply expedited removal under INA § 235, 8 U.S.C. § 1225, or to initiate removal proceedings before an immigration judge under INA § 240, 8 U.S.C. § 1229a); *see also Matter of Q. Li*, 29 I&N Dec. 66, 68 (BIA 2025) (The Department "may place [noncitizens] arriving in the United States in either expedited removal proceedings under section 235(b)(1) of the INA, or full removal proceedings under section 240 of the INA[.]" (citations omitted)).

> 2.    <u>Applicants for admission are subject to detention under Section 1225(b)</u>

Applicants for admission to the United States are subject to detention under 8 U.S.C. § 1225(b), which

> applies primarily to [noncitizens] seeking entry into the United States ("applicants for admission" in the language of the statute). Section 1225(b) divides these applicants into two categories. First, certain [noncitizens] claiming a credible fear of persecution under §1225(b)(1) "shall be detained for further consideration of the application for asylum." §1225(b)(1)(B)(ii). Second, [noncitizens] falling within the scope of §1225(b)(2) "shall be detained for a [removal] proceeding." §1225(b)(2)(A).
>
> Read most naturally, §§1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) [noncitizens] are detained for "further consideration of the application for asylum," those proceedings end, detention under §1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention.

*Jennings,* 583 U.S. at 297 (quotations in original).

> 3.    The mechanism for release for those subject to detention under
> <u>Section 1225(b) is humanitarian parole under Section 1182(d)(5)(A)</u>

Those applicants for admission subject to detention under Section 1225(b) may be temporarily released on parole,

> "for urgent humanitarian reasons or significant public benefit." § 1182(d)(5)(A); *see also* 8 CFR §§ 212.5(b), 235.3 (2017). Such parole, however, "shall not be regarded as an admission of the [noncitizen]." 8 U. S. C. §1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."

*Jennings*, 583 U.S. at 288.

> 4. Humanitarian parole is discretionary and granted on a case-by-case basis
> <u>for urgent humanitarian reasons or significant public benefit</u>

The decision to grant or deny any particular applicant humanitarian parole is entirely discretionary.

> The Secretary of Homeland Security may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any [noncitizen] applying for admission to the United States, but such parole of such [noncitizen] shall not be regarded as an admission of the [noncitizen] and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A).

"[A noncitizen] who is paroled under section 1182(d)(5) of this title . . . shall not be considered to have been admitted." § 1101(a)(13)(B). Then, "after [the] purpose of [the] parole has been served, [the noncitizen]'s status reverts to that which he had at time he was inspected and paroled into United States[.]" *Cruz-Miguel v. Holder*, 650 F.3d 189, 198 (2d Cir. 2011) (citing § 1182(d)(5)(A)).

> 5. Conditional parole under 8 U.S.C. § 1226(a)(2)(B) is a form of release
> <u>from immigration detention</u>

Section 1226 authorizes discretionary release on a traditional monetary bond, 8 U.S.C. § 1226(a)(2)(A), or discretionary release on "conditional parole," which is essentially bond without a monetary component. 8 U.S.C. § 1226(a)(2)(B). Unlike humanitarian parole, which permits entry into the United States, and is granted for urgent humanitarian reasons or significant public benefit, "Congress employed the term 'conditional parole' to refer to the release of [a noncitizen] subject to removal from the United States." *Castillo-Padilla v. Att'y Gen.*, 417 F.

App'x 888, 891 (11th Cir. 2011) (citing Section 1226(a)(2)). Conditional parole under Section 1226(a)(2)(B) is distinct from humanitarian parole under Section 1182(d)(5) and refers to releasing a noncitizen on his own recognizance. *Matter of Cabrera-Fernandez*, 28 I&N Dec. 747, 747 (B.I.A. 2023) ("The respondents were . . . released on their own recognizance under section 236 of the INA, 8 U.S.C. § 1226[.]"). For release from detention under Section 236(a) of the INA, a noncitizen has the burden of proving that his release "would not pose a danger to property or persons, and that [he] is likely to appear for any future proceedings." 8 C.F.R. § 236.1(c)(8); *see Matter of Adeniji*, 22 I&N Dec. 1102, 1112 (B.I.A. 1999). Section 236(a) vests "extremely broad discretion" in the Attorney General and his or her delegates to determine whether to detain or release a noncitizen pending a final decision in removal proceedings, and on what terms a noncitizen should be released. *Matter of Guerra*, 24 I&N Dec. 37, 39 (B.I.A. 2006); *see* INA § 236(a); *Reno v. Flores*, 507 U.S. 292 (1993).

Further, a Form I-220A, "Order of Release on Recognizance," is the form used to release individuals, such as Plaintiffs, from immigration custody on conditional parole pursuant to Section 1226(a)(2)(B). By contrast, a Form I-94, "Arrival/Departure Record or Interim Notice Authorizing Parole," evinces a grant of humanitarian parole under Section 1182(d)(5). Specifically, Section 1226(a) states:

> (a) Arrest, detention, and release
>
> On a warrant issued by the Attorney General, [a noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General-
>
> > (1) may continue to detain the arrested [noncitizen]; and
> >
> > (2) may release the [noncitizen] on-
> >
> > > (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

(B) conditional parole; but

(3) may not provide the [noncitizen] with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the [noncitizen] is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

8 U.S.C. § 1226(a).

Until recently, the government interpreted INA § 236, 8 U.S.C. § 1226(a), to be an available detention authority for noncitizens present without admission or parole placed directly in INA § 240 removal proceedings.[6] *See, e.g.*, *Cabrera-Fernandez*, 28 I&N Dec. at 747; *Matter of R.A.V.P.*, 27 I&N Dec. 803, 803 (B.I.A. 2020); *Matter of Garcia-Garcia*, 25 I&N Dec. 93, 94 (B.I.A. 2009); *Matter of D.J.*, 23 I&N Dec. 572 (Att'y Gen. 2003). Subsequent legal developments, however, clarified that 8 U.S.C. § 1225 is the applicable detention authority for all applicants for admission. In *Matter of Q. Li*, the Board of Immigration Appeals held that a noncitizen who illegally crossed into the United States between points of entry and was apprehended without a warrant while arriving is detained under INA § 235(b), 8 U.S.C. § 1225(b). 29 I&N Dec. at 71; *see also Florida v. United States*, 660 F. Supp. 3d 1239, 1275 (N.D. Fla. 2023) (holding that 8 U.S.C. § 1225(b) mandates detention of applicants for admission throughout removal proceedings, rejecting the assertion that the Department has discretion to choose to detain an

---

[6]    Prior to *Matter of Q. Li*, the government often released applicants for admission that were subject to mandatory detention with a release on recognizance under 8 U.S.C. § 1226(a)(2)(A) or with a bond under § 1226(a)(2)(B). *See, e.g., Castillo-Padilla*, 417 F. App'x at 890. ("The Board stated that Castillo-Padilla had failed to adequately explain how his release from custody on a $12,000 bond constitutes conditional parole, but the Board found that, even if Castillo-Padilla had been afforded conditional parole under section 236(a)(2)(B) of the Act, 8 U.S.C. § 1226(a)(2)(B), that was not the same as parole into the United States that would make him eligible for adjustment of status under section 245(a), 8 U.S.C. § 1255(a)" (citations omitted)); *Delgado-Sobalvarro v. Attorney General*, 625 F.3d 782, 782, 784 (3d Cir. 2010) ("petitioners were released on conditional parole on their own recognizance in accordance with INA § 236.").

applicant for admission under either 8 U.S.C. §§ 1225(b) or 1226(a)). As discussed herein, these legal developments do not entitle Plaintiffs to Section 1182(d)(5) humanitarian parole.

      6.    <u>Eligibility for adjustment under the Cuban Adjustment Act of 1966</u>

The Cuban Adjustment Act of 1966 allows certain Cuban nationals present in the United States to adjust their status to that of lawful permanent residents. Cuban Adjustment Act of 1966, Pub. L. No. 89-732, 80 Stat. 1161 (codified as amended at 8 U.S.C. § 1255 note); *see also* 8 C.F.R. § 245.2(a)(2)(ii). It applies to a person who is "a native or citizen of Cuba and who has been inspected and admitted or paroled into the United States subsequent to January 1, 1959, and has been physically present in the United States for at least one year." Pub. L. No. 89-732, § 1.

      7.    <u>The impact of the 2017 termination of "wet-foot/dry foot" on the Cuban Adjustment Act of 1966</u>

On January 12, 2017, Former Secretary of Homeland Security Johnson announced, "several changes to [the Department's] policies and regulations affecting Cuban nationals." DHS, Fact Sheet: Changes to Parole and Expedited Removal Policies Affecting Cuban Nationals, https://www.dhs.gov/publication/changes-parole-and-expedited-removal-policies-affecting-cuban-nationals (last visited Aug. 22, 2025). "Specifically, [the Department] has eliminated a special parole policy for arriving Cuban nationals commonly known as the "wet-foot/dry-foot" policy[.]" *Id*. "It is now Department policy to consider any requests for such parole in the same manner as parole requests filed by nationals of other countries." *Id*. Additionally, the Department "also eliminat[ed] an exemption that previously prevented the use of expedited removal proceedings for Cuban nationals apprehended at ports of entry or near the border." *Id*.

Specifically, as to humanitarian parole:

The policy commonly known as "wet-foot/dry-foot" generally refers to an understanding under which Cuban migrants traveling to the United States who are intercepted at sea ("wet foot") are returned to Cuba or resettled in a third country,

while those who make it to U.S. soil ("dry foot") are able to request parole and, if granted, lawful permanent resident status under the Cuban Adjustment Act.

The former [Immigration and Naturalization Service ("INS")] established a policy strongly encouraging the parole of Cuban nationals who arrived in the United States so that they could apply for relief under the Cuban Adjustment Act. Secretary Johnson is rescinding this outdated INS policy.

*Id*.

## B.    The Court Lacks Jurisdiction Over Plaintiffs' Claims and to Grant the Relief Plaintiffs Seek

A district court must dismiss an action if the court lacks jurisdiction over the subject matter of the suit. *See* Fed. R. Civ. P. 12(b)(1), 12(h)(3). Here, Plaintiffs contend that Defendants improperly granted them conditional parole under 8 U.S.C. § 1226(a)(2) and ask the Court to order that they be granted humanitarian parole under 8 U.S.C. § 1182(d)(5), and have their statuses adjusted pursuant to the Cuban Adjustment Act. Compl. (ECF No. 1) at 24-25. The INA precludes the claims that Plaintiffs have filed in this Court in two different ways.

### 1.    All Questions Arising From Removal Proceedings Are Channeled Into Those Removal Proceedings And Review Thereof

First, the INA provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove [a noncitizen] from the United States under this subchapter shall be available only in judicial review of a final [removal] order." 8 U.S.C. § 1252(b)(9). The INA also provides that, except as provided in section 1252, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." *Id.* § 1252(g). Moreover, once Plaintiffs' respective removal proceedings have concluded (as they are all still pending), if Plaintiffs wish to challenge their

respective orders, they must file petitions of review in "an appropriate court of appeals."  8 U.S.C. § 1252(a)(5).

Courts in this district have found that 8 U.S.C. § 1252 bars district court review of a challenge to actions that are inextricably linked to challenges to a removal order, even if the action challenged is indirectly connected to the removal order itself.  *Chen v. Rodriguez*, 200 F. Supp. 3d 174, 182 (D.D.C. 2016) (finding no jurisdiction where plaintiff sought to challenge USCIS's termination of an adjustment of status application while plaintiff was subject to a removal order).

The Third Circuit recently found that a district court lacked jurisdiction over the removal proceedings of Mahmoud Khalil because the INA channels "[j]udicial review of all questions of law... arising from any action taken or proceeding brought to remove an alien from the United States" into a single petition for review filed with a federal court of appeals. *Khalil v. President, United States*, No. 25-2162, 2026 WL 111933, at *1 (3d Cir. Jan. 15, 2026) (quoting 8 U.S.C. § 1252(b)(9)).  The Third Circuit explained in *Khalil* "[t]he 'point' of [subsection 1252(b)(9)] . . . is to channel claims into a single [petition for review], not to bar claims that do not fit within that process." *Khalil*, 2026 WL 111933, at *8 (cleaned up). When a noncitizen "can get review later— by litigating before an immigration judge, the Board of Immigration Appeals, and then by way of a [petition for review] to a court of appeals—they must do so" and "[d]istrict courts play little if any role in that sequence." *Id*. (cleaned up). It is only when a non-citizen "raise[s] claims that courts cannot 'meaningfully' review through the [petition for review] process, those claims do not 'aris[e] from' the 'action[s] taken' or 'proceeding[s] brought' to remove them." *Id.*

Here, Plaintiffs take issue with how they were originally processed and argue that the fact that they were deemed to have been given conditional parole and released under §236(a), rather than detained under §235 and evaluated for humanitarian parole, affects their ability to apply for

adjustment of status and, by extension, their vulnerability to removal. Am. Compl. (ECF No. 17) at 1-3. Thus, Plaintiffs' current claims are tied up with any action that might be taken to remove them and must be addressed in connection with their removal proceedings. Indeed, Plaintiffs are all subject to ongoing removal proceedings before immigration judges. Hoyos Hernandez Decl. ¶¶ 5, 7; Avila Leyva Decl. ¶¶ 5-6; Romero Hernandez Decl. ¶ 7. Plaintiffs will each have an opportunity to raise their concerns about the authority under which they were released and paroled in those proceedings and, if they have concerns regarding the decisions of any of the immigration judges, they can submit petitions for review in the appropriate court of appeals. 8 U.S.C. § 1252(b)(9). As the Third Circuit explained in *Khalil*, section 1252 was specifically designed as a "zipper" clause, channeling most claims that even related to removal into petitions for review and ensuring that petitioners only get one bite at the apple. *Khalil*, 2026 WL 111933, at *9. If a district court in this district reviews Defendants' actions with respect to Plaintiffs at this stage, it would set in motion a series of events that could lead to an appeal to the D.C. Circuit, all while removal proceedings progress in Florida that could lead to appeals regarding the same issues in the Eleventh Circuit. That would encourage the same sort of piecemeal—and potentially conflicting—litigation that section 1252 is designed to prevent. *Id.*

## 2. Parole Decisions Are Discretionary And Unreviewable

The INA also provides that:

> Notwithstanding any other provision of law (statutory or nonstatutory). . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review— . . .

> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be

> in the discretion of the Attorney General or the Secretary of Homeland Security,
> other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii).  In turn, INA Section 212(d)(5)(A), 8 U.S.C. § 1182(d)(5), provides

that parole, which includes humanitarian parole, is a discretionary determination of the Secretary:[7]

> The Attorney General may . . . in his discretion parole into the United States
> temporarily under such conditions as he may prescribe only on a case-by-case basis
> for urgent humanitarian reasons or significant public benefit any [noncitizen]
> applying for admission to the United States[.]

*Id.*  These provisions work to bar Plaintiffs' claims against Defendants here.

As Plaintiffs make clear, they are challenging the "conditions" under which the Secretary's

designee determines to parole noncitizens into the United States.  *See* 8 C.F.R. § 212.5(a) ("The

Secretary or his designees may invoke, in the exercise of discretion, the authority under section

212(d)(5)(A) of the Act.").  Indeed, Plaintiffs phrase their requested relief as seeking that the Court

"declare that Plaintiffs['] . . . classification under 8 U.S.C. § 1226 via I-220A documentation [i.e.,

conditional parole] was unlawful, procedurally improper, and contrary to statutory mandates[.]"

Compl. (ECF No. 1) at 24.  Plaintiffs also seek injunctive relief that would require Defendants to

adjust their status under the Cuban Adjustment Act, a process for which—absent inspection and

admission—parole under § 1182(d)(5) is a prerequisite. *See id.* at 24-35. The INA does not permit

the Court to do either of those things.

The decision of the Secretary's delegee to grant a noncitizen parole is expressly

discretionary by statute.  Therefore, these decisions are not reviewable in court.  *See, e.g.*, *Battineni*

*v. Jaddou*, Civ. A. No. 24-0302 (CRC), 2025 WL 579814, at *4 (D.D.C. Feb. 21, 2025) (finding

---

[7]    The text of the U.S. Code refers to the Attorney General having this authority.  8 U.S.C.
§ 1182(d)(5)(A).  "The Homeland Security Act of 2002 later transferred this authority to the
Secretary of Homeland Security, though the INA still refers to the Attorney General."  *Meza v.
Renaud*, 9 F.4th 930, 931 (D.C. Cir. 2021).

that the Secretary's decision whether to grant advance parole is discretionary and that judicial review was precluded); *Martinez Mayorga v. Meade*, Civ. A. No. 24-22131, 2024 WL 4298815, 2024 U.S. Dist. LEXIS 174421, at *19, 20 (S.D. Fla. Sept. 26, 2024) (concluding that the court lacked jurisdiction under Section 1252(a)(2)(B)(ii) to review the "decision to have not granted release through [humanitarian] parole due to the health of Petitioner's mother" as it is a "discretionary" determination"); *Samirah v. O'Connell*, 335 F.3d 545, 549 (7th Cir. 2003) ("Because the Attorney General's decision to grant or revoke parole is squarely within the ambit of § 1252(a)(2)(B)(ii), we hold that the district court lacked jurisdiction to review, much less reverse, the revocation of [the noncitizen's] parole."); *Vazquez Romero v. Garland*, 999 F.3d 656, 665 (9th Cir. 2021) ("Second-guessing whether the immigration authorities properly paroled a returning [lawful permanent resident] into the country would entail not only scrutinizing immigration authorities' evidence at the border but also interfering with the government's exercise of its parole discretion."); *Cf. Dixit ex rel. Ad v. Fairnot*, No. 23-11436, 2025 WL 1733887, at *5 (11th Cir. June 23, 2025) ("the failure to receive relief that is purely discretionary in nature, such as humanitarian parole, does not amount to a deprivation of a liberty interest" (citation modified; citing *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999)).

Notably, in *Alonso-Escobar v. USCIS Field Office Direcotr*, 462 F. App'x 933, 934-935 (11th Cir. 2012), the Eleventh Circuit affirmed the dismissal of a complaint for lack of subject matter jurisdiction where plaintiff "sought a court order requiring the USCIS to grant him parole into the United States so he could apply to adjust his immigration status under the Cuban Adjustment Act." *Id.* It held the district court lacked subject matter jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(ii) because the plaintiff effectively "challenged Defendants' discretionary decision not to parole him into the United States." *Alonso-Escobar,* 462 F. App'x at 935. Similarly,

here, Plaintiffs are effectively challenging Defendants' discretionary decision not to parole them in the United States and asking the Court to force Defendants to give them humanitarian parole. As in *Alonso-Escobar*, Plaintiffs' claims should be dismissed for lack of subject matter jurisdiction under Section 1252(a)(2)(B)(ii).

Finally, adjustment of status is also a discretionary decision and thus the Court lacks jurisdiction to order it. *See* 8 U.S.C. § 1255(a): "The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, *in his discretion* and under such regulations as he may prescribe . . ." (emphasis added)

### C.    Judicial Review Is Unavailable Under the APA.

The APA specifically states it does not apply where: (1) "statutes preclude judicial review; or (2) [when] agency action is committed to agency discretion by law." 5 U.S.C. § 701(a); *Texas All. for Home Care Servs. v. Sebelius*, 681 F.3d 402, 408 (D.C. Cir. 2012); *Oryszak v. Sullivan*, 576 F.3d 522, 525 (D.C. Cir. 2009) ("Because the APA does not apply to agency action committed to agency discretion by law, a plaintiff who challenges such an action cannot state a claim under the APA."). In this case, both Sections 701(a)(1) and (a)(2) of the APA apply.

Regarding APA Section 701(a)(1), and as discussed above, 8 U.S.C. § 1252(a)(2)(B)(ii) explicitly precludes judicial review.  With respect to APA Section 701(a)(2) (agency discretion), the grant of humanitarian parole is, explicitly, a discretionary decision made by the Department of Homeland Security awarded on a case-by-case basis. *See* 8 U.S.C. § 1182(d)(5)(A) ("The Security of Homeland Security may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit."); *see also Vazquez Romero*, 999 F.3d at 665 ("We have previously concluded that the jurisdiction-stripping provision of § 1252(a)(2)(B)(ii) applies to discretionary

parole decisions under § 1182(d)(5)." (citing *Hassan v. Chertoff*, 593 F.3d 785, 790 (9th Cir. 2010))).

Accordingly, the Court cannot force Defendants to grant humanitarian parole as a matter of right.

### D.    Plaintiffs Lack Standing for Their APA Claims as They Cannot Demonstrate Redressability

"To demonstrate standing under Article III of the Constitution, [the plaintiffs] must show an injury in fact caused by the defendant and redressable by judicial relief." *Stilwell v. Off. of Thrift Supervision*, 569 F.3d 514, 518 (D.C. Cir. 2009) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The party invoking federal jurisdiction bears the burden of establishing these elements of standing, i.e., injury-in-fact, causation, and redressability. *See id*. Moreover, because they are not merely pleading requirements, but "rather an indispensable part of the plaintiff[s'] case," *Lujan*, 504 U.S. 561, each element must be supported in the same manner as any other issue on which the plaintiffs bear the burden of proof, *see id*.

Here, Plaintiffs have not demonstrated that it is "likely, as opposed to merely speculative, that the[ir alleged] injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561. A plaintiff cannot make this required showing when the record fails to establish that a plaintiff's requested relief would result in a different outcome. *Scenic Am., Inc. v. Dep't of Transp.*, 836 F.3d 42, 50-53 (D.C. Cir. 2016) (holding that the court would not rely on outcomes that were "'speculative,' rather than 'likely'" and that, based upon the evidence before the court, vacating guidance was unlikely to redress plaintiff's injuries). Plaintiffs' APA claims rest on the proposition that the Department would exercise discretion to grant humanitarian parole, thereby making them eligible to adjust their statuses under the Cuban Adjustment Act. But because grants

of parole are discretionary decisions, it is purely speculative that Plaintiffs would be granted humanitarian parole under 8 U.S.C. § 1182(d)(5)(A).

Plaintiffs assume that if DHS had applied the alleged proper statute, DHS *still* would have released them. But that is far from obvious. The standard for release under 8 U.S.C. § 1226(a) is more permissive than the standard for release under 8 U.S.C. § 1182(d)(5)(A). *See Matter of Castillo-Padilla*, 25 I&N Dec. at 259. It may be that, had DHS applied the alleged right statute, Plaintiffs would never have been released from detention. The world will never know. But to deem a non-citizen eligible to apply for adjustment of status based on an erroneous initial premise that DHS would have released him had it evaluated release under the correct statute requires this Court to engage in an impermissibly counterfactual exercise well beyond the facts before it. *Cf. Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 589 U.S. 57, 65 (2020) ("[N]unc pro tunc orders are not some Orwellian vehicle for revisionist history—creating 'facts' that never occurred in fact. Put plainly, the court cannot make the record what it is not." (citations and quotation marks omitted)); *Missouri v. Jenkins*, 495 U.S. 33, 49 (1990) (observing that federal courts may issue nunc pro tunc orders to "reflect the reality" of what has already occurred, but the court "cannot make the record what it is not"); *United States v. Daniels*, 902 F.2d 1238, 1241 (7th Cir. 1990) ("A judge may correct a clerical error at any time" but "may not rewrite history.").

Thus, even if this Court was to find that Defendants used the wrong statutory provision to detain Plaintiffs, an order vacating that decision would not lead to the relief requested by Plaintiffs: that they be granted humanitarian parole and have their statuses adjusted to that of legal permanent residents.  This is especially true because, as demonstrated, this Court cannot order the Secretary to grant humanitarian parole.  Thus, for the independent reason that they have not established standing, Plaintiffs' APA claim should be dismissed.

**E.      Plaintiffs Fail to State a Claim Because They Are Not Entitled to the Discretionary Grant of Humanitarian Parole as a Matter of Right.**

Plaintiffs' claims essentially boil down to the contention that they are entitled to discretionary parole as a matter of right.  *See* Am. Compl. (ECF No. 17) at 2, 9.  Plaintiffs infer that—if vacated by this Court—their respective conditional parole releases (Releases on Recognizance) will transfigure into humanitarian parole as a matter of right.  However, Plaintiffs do not cite to any law supporting that inference and do not explain why a Release on Recognizance allegedly improperly issued in 2022 does not remain—status quo—an improperly issued Release on Recognizance in 2025.

In fact, even if—as alleged—the conditional parole was not properly granted, any mistake benefitted Plaintiffs because they were released from detention, despite not having a humanitarian parole. *See Jennings*, 583 U.S. at 300 ("regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit").  This is significant because after the elimination of the "Wet Foot, Dry Foot" policy, Cuban nationals were subject to expedited removal. *See* DHS, Fact Sheet: Changes to Parole and Expedited Removal Policies Affecting Cuban Nationals, https://www.dhs.gov/publication/changes-parole-and-expedited-removal-policies-affecting-cuban-nationals (last visited Aug. 22, 2025).  Moreover, Plaintiffs' releases from detention in 2022 did not bar them from requesting humanitarian parole with the Department of Homeland Security.

Courts of Appeals have consistently and firmly denied noncitizen attempts to adjust status using a conditional parole, instead of humanitarian parole, finding they are inapposite in purpose and history.  Significantly, in *Castillo-Padilla*, 417 F. App'x at 891, the Eleventh Circuit addressed the difference in a case where plaintiff, who was released with a conditional parole, argued he was

eligible for Cuban adjustment. *Id.* ("Castillo-Padilla argues that when he was released from custody on 'conditional parole' he became eligible for an adjustment of status."). The Eleventh Circuit affirmed the BIA's finding that he was ineligible explaining "when Congress uses different language in similar sections, it intends different meanings." *Castillo-Padilla,* 417 F. App'x at 891 (citing *DIRECTV, Inc. v. Brown*, 371 F.3d 814, 818 (11th Cir. 2004)). "[A noncitizen] may be 'paroled into the United States' by the Attorney General temporarily if the parole would serve urgent humanitarian reasons or provide a significant public benefit, *id*. § 1182(d)(5)(A), which contrasts starkly with being released on conditional parole until immigration authorities decide if [a noncitizen] should be removed from the United States[.]" *Id*. (quotations omitted).

In *Cruz-Miguel v. Holder*, 650 F.3d 189, 193, 198 (2d Cir. 2011), the Second Circuit held the "language of the relevant INA provisions makes plain that [a noncitizen] released on conditional parole pending resolution of ongoing removal proceedings is not thereby 'paroled into the United States' so as to be eligible for adjustment of status under § 1255(a)." *Id.*

Similarly, in *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1119 (9th Cir. 2007), the Ninth Circuit engaged in a detailed explanation of both statutes and highlighted that Section 1226(a) "does not restrict conditional parole to cases involving 'urgent humanitarian reasons or significant public benefit.'" *Id.* Additionally, it specified that "Congress did not view 'conditional parole' as the equivalent of 'parole into the United States' under § 1182(d)(5)(A) and thus as a path to lawful permanent residence under § 1255(a)." *Id.* at 1119.

Lastly, in *Delgado-Sobalvarro*, 625 F.3d at 786, the Third Circuit, in determining that a conditional parole is not equivalent to a humanitarian parole, explained "the history of the statute [adjustment of status under 8 U.S.C. § 1255(a)] suggests that Congress sought to limit the universe of those who could adjust status to [noncitizens] whose admission was 'for urgent humanitarian

reasons or significant public benefit' as set forth in § 212(d)(5)(A)[.]'" *Id.* "To allow [noncitizens] released on conditional parole under § 236 [§ 1226(a)] to adjust status under § 245 [§ 1255] would frustrate Congress's intention to limit eligibility to refugees whose admission provides a public benefit or serves an urgent humanitarian purpose." *Id.* at 787.

F.    **Plaintiffs Have Not Stated Claims for Fifth Amendment Due Process Violations**

Plaintiffs also purport to bring claims under the Due Process Clause of the Fifth Amendment. Under either a procedural and substantive theory, these claims plainly lack merit.

To the extent Plaintiffs purport to bring a procedural due process claim (i.e., that the procedures afforded them are constitutionally inadequate), it plainly fails. "[T]he Court long ago held that Congress is entitled to set the conditions for [a noncitizen's] lawful entry into this country and that, as a result, [a noncitizen] at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020). Put another way, a noncitizen "who seeks admission to this country may not do so under any claim of right. Admission of noncitizens to the United States is a privilege granted by the sovereign United States Government. Such privilege is granted to a noncitizen only upon such terms as the United States shall prescribe. It must be exercised in accordance with the procedure which the United States provides." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 597, 542 (1950). "Whatever the procedure authorized by Congress is, it is due process[.]" *Id.* at 544. Consequently, to the extent Plaintiffs complain about improper or inadequate procedures, Plaintiff must rely on a statutory claim (i.e., the APA) and not the procedural Due Process Clause of the Constitution. And, as explained above, parole decisions are discretionary and unreviewable.

To the extent Plaintiffs purport to bring substantive due process claims, the Supreme Court has rejected that claim too. As the Supreme Court observed, in *Department of State v. Muñoz,*

602 U.S. 899, 911-12 (2024), "the through line of history is recognition of the Government's

sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Id.*[8]

## II.    Plaintiffs' Motion for Temporary Restraining Order Should Be Denied

### A.    Plaintiffs Will Not Suffer Imminent Irreparable Harm In The Absence Of Injunctive Relief

Movants for a preliminary injunction must show that they are "likely to suffer irreparable

harm in the absence of preliminary relief." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir.

2014); *Wis. Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per

curiam) ("The basis for injunctive relief in the federal courts has always been irreparable harm and

inadequacy of legal remedies") (cleaned up).  A preliminary injunction may not issue "based only

on a possibility of irreparable harm . . . [since] injunctive relief [i]s an extraordinary remedy that

may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555

U.S. at 22.

The "standard for irreparable harm is particularly high in the D.C. Circuit." *Fisheries*

*Survival Fund v. Jewell*, 236 F. Supp. 3d 332, 336 (D.D.C. 2017).  If a party makes no irreparable

---

[8]    Also, although Plaintiffs bring an APA claim, Defendants should be excused from Local Civil Rule 7(n)(1)'s requirement that Defendants file a certified list of an administrative record and serve an administrative record simultaneously with a dispositive motion.  LCvR 7(n)(1).  An administrative record is not necessary to resolve Defendants' motion to dismiss because Defendants' motion argues that judicial review is not available in this case, which is a threshold legal issue that does not require review of the administrative record.  Moreover, even if judicial review is available, Defendants have moved to dismiss by relying entirely on the facts alleged in the Complaint, incorporated by reference in the Complaint, or subject to judicial notice. *See, e.g.*, *Connecticut v. Dep't of Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018) (Court granted Federal Defendants' motion to waive compliance with Local Civil Rule 7(n) because the Court did not need to consider the administrative record in evaluating the motions before it); *Mdewakanton Sioux Indians of Minn. v. Zinke*, 264 F. Supp. 3d 116, 123 n.12 (D.D.C. 2017) (same); *Carroll v. Off. of Fed. Contract Compliance Programs*, 235 F. Supp. 3d 79, 81 n.1 (D.D.C. 2017); *PETA v. Fish & Wildlife Serv.*, 59 F. Supp. 3d 91, 94 n.2 (D.D.C. 2014) (waiving compliance with LCvR 7(n) and dismissing complaint).

injury showing, a court may deny a motion for injunctive relief without considering the other factors. *CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995); *Wis. Gas*, 758 F.2d at 674, 676 (because movants could not establish irreparable harm, the court need not address any of the other factors). The injury "must be both certain and great; it must be actual and not theoretical [and] . . . of such imminence that there is a 'clear and present' need for equitable relief." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (citation omitted); *Doe v. Mattis*, 889 F.3d 745, 782 (D.C. Cir. 2018) (injury must be "certain," "great" and "actual").

A movant must substantiate that the irreparable injury is "likely" to occur in the absence of relief. *See, e.g.*, *Nat'l Parks Conservation Ass'n v. U.S. Forest Serv.*, Civ. A. No. 15-1582 (APM), 2016 WL 420470, at *8 (D.D.C. Jan. 22, 2016) ("The movant bears the burden of substantiating, with evidence, that the injury is certain, imminent, great, and beyond remediation"). The Local Civil Rules underscore the need for the movant to present such proof, requiring that "[a]n application for a preliminary injunction . . . be supported by all affidavits on which the plaintiff intends to rely" and prohibiting the filing of "[s]upplemental affidavits" without "permission of the Court." *See id.* (citing LCvR 65.1(c)). The vague allegations about *possible* future harms contained in Plaintiffs' Amended Complaint fall far short of showing the D.C. Circuit requires of an applicant for a preliminary injunctive relief. *See*, *e.g.*, *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (noting the Circuit's "high standard for irreparable injury"). "Bare allegations of what is likely to occur are of no value" because the district court must make the determination of "whether the harm will *in fact* occur." *Wis. Gas*, 758 F.2d at 674 (emphasis in original).

1.    <u>Inexcusable Delay</u>

As a threshold matter, the fact that Plaintiffs waited several years after receiving conditional parole and being placed in 240 Proceedings to even file suit in this case dooms their request for this extraordinary relief.

As alleged in the Amended Complaint, Plaintiffs all entered the United States in 2022, were placed in removal proceedings, and were released on conditional parole. Am. Compl. (ECF No. 17) at 5; Hoyos Hernandez Decl. ¶ 4; Avila Leyva Decl. ¶¶ 3-4; Romero Hernandez Decl. ¶¶ 4-5. Plaintiffs did not initiate this action and file their motion for preliminary injunction until July 2025. *Id.*; Pls' Mot. (ECF No. 18). While Plaintiffs claim that their alleged improper classification when they were first detained has prevented them from adjusting their statuses under the Cuban Adjustment Act, those alleged harms have existed since 2022 and there is nothing irreparable about them. Moreover, as discussed in more detail below, the remaining harms Plaintiffs allege are purely speculative, as none of them have had their conditional parole revoked or been placed in expedited removal proceedings. *See generally*, Am. Compl. (ECF No. 17). Therefore, there are no more proximate government actions that Plaintiffs allege are causing them harm, much less irreparable harm.

"An unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm." *Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005). "The D.C. Circuit has found that a delay of forty-four days before bringing action for injunctive relief was 'inexcusable,' and 'bolstered' the 'conclusion that an injunction should not issue,' particularly where the party seeking an injunction had knowledge of the pending nature of the alleged irreparable harm." *Open Top Sightseeing USA v. Mr. Sightseeing, LCC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014) (quoting *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975)); *see also Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30, 44 (D.D.C.

2000) (delay of two months in bringing action "militates against a finding of irreparable harm"); *Biovail Corp. v. FDA*, 448 F. Supp. 2d 154, 165 (D.D.C. 2006) ("The delay in filing this suit further undermines any showing of irreparable injury").

Plaintiffs' delay here clearly indicates that no imminent or irreparable harm was caused (or is being caused) by the manner in which their detention was classified or the type of parole they were granted. In fact, as discussed above, Plaintiffs benefitted because they were released from detention, despite not having a humanitarian parole even though policy changes regarding Cuban nationals made them potentially subject to expedited removal. Plaintiffs' motion for preliminary injunction should be denied.

2.     No Other Imminent, Irreparable Harm

Even were the Court to excuse Plaintiffs' unreasonable delay, the harms cited by Plaintiffs in their Amended Complaint are neither imminent nor irreparable.

The primary harm that Plaintiffs allege is that they have not been able to adjust their immigration status under the Cuban Adjustment Act due to the allegedly improper way that they were processed when they were originally detained (i.e. the fact that they were not placed in a position to be evaluated for humanitarian parole). Am. Compl. (ECF No. 17) at 10-11. But these alleged injuries are not irreparable. As discussed above, Plaintiffs will have a chance to address alleged improprieties in their paperwork as part of their removal proceedings, and if they are dissatisfied with the decisions of any immigration judge, they can file petitions of review to the appropriate court of appeals. Moreover, as discussed above, the decision whether or not to grant parole is purely discretionary and this Court does not have the authority to order the Secretary to grant Plaintiffs any particular form of parole.

The remaining harms Plaintiffs allege are almost entirely speculative. Specifically, Plaintiffs allege that, because they have not been able to adjust their statuses under the Cuban

Adjustment Act, they "risk adverse action," Am. Compl. (ECF No. 17) at 11, and the risk of being "arrest[ed] as 'noncompliant,'" "det[ained] without parole review," and being subjected to "removal proceedings based on void records," Pls' Mot. (ECF No. 18) at 4  No Plaintiff, however, alleges that they have been detained because of his current status, *see id.*, and any suggestion that any of the Plaintiffs will be detained at this point is purely speculative.

Such "bare allegations of what is likely to occur are of no value since the court must decide whether the harm will *in fact* occur," *Wis. Gas*, 758 F.2d at 674 (emphasis in original), and whether "the alleged harm will directly" flow from the occurrence movant seeks to compel or enjoin, *id.*; *see also N.Y. Times Co. v. Def. Health Agency*, Civ. A. No. 21-0566 (BAH), 2021 WL 1614817, at *8 (D.D.C. Apr. 25, 2021) (denying motion for preliminary injunction in Freedom of Information Act where plaintiff sought expedited processing of request for data regarding the federal government's nationwide effort to distribute coronavirus vaccines).

Therefore, these allegations are insufficient to support a request for preliminary injunctive relief.[9]

\*   \*   \*

Having failed to demonstrate that they will be subject to an imminent threat of irreparable harm without injunctive relief, Plaintiffs have failed to meet their burden of establishing that they are entitled to a preliminary injunction.

---

[9]    Plaintiffs' Motion also asserts that, because of their "misclassification," they "lose their statutory eligibility windows," but provide no additional information about what "eligibility windows" they are referencing.  Pls' Mot. (ECF No. 18) at 4-5.  Such threadbare allegations fall short of what is necessary to demonstrate that Plaintiffs are entitled to the extraordinary relief of a temporary restraining order.

### B.    Plaintiffs' Motion Does Not Demonstrate That They Will Succeed on the Merits

Plaintiffs' Motion for Temporary Restraining Order does not demonstrate that Plaintiffs will succeed on the merits.  As explained above, this Court does not have jurisdiction over Plaintiffs' APA claims, Plaintiffs have not established redressability with respect to their APA claims, and they have not stated a claim upon which relief can be granted for violations of the Fifth Amendment or for equitable relief under an ultra vires theory.  Because Plaintiffs have not demonstrated that they will succeed on the merits of their claims against any defendant, their motion for preliminary injunction should be denied.

### C.    The Public Interest and the Equities Strongly Favor Defendants

The final two factors required for preliminary injunctive relief—a balancing of the harm to the opposing party and the public interest—merge when the Government is the opposing party. *See, e.g.*, *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Colo. Wild Horse v. Jewell*, 130 F. Supp. 3d 205, 220-21 (D.D.C. 2015); *Pursuing Am.'s Greatness v. Fed. Election Comm'n,* 831 F.3d 500, 511 (D.C. Cir. 2016) ("[T]he government's interest is the public interest."). Courts are to give the government "the widest possible latitude in the dispatch of its own affairs." *Sampson v. Murray*, 415 U.S. 61, 83 (1974).  Courts must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982).

Here, Plaintiffs allege that they are harmed because they cannot adjust their statuses because they were granted a different type of discretionary parole than that to which they believe they are entitled and speculate as to what harms might occur in the future because of their current classifications.  On the other hand, the Secretary has the discretion to grant parole to noncitizens and Defendants have interests in being able to enforce the nation's immigration law.  Also, "it is

in the public interest to deny injunctive relief when the relief is not likely deserved under law." *Hubbard v. United States,* 496 F. Supp.2d 194, 203 (D.D.C. 2007) (quoting *Qualls v. Rumsfeld,* 357 F. Supp.2d 274, 287 (D.D.C. 2005)); *see also Serono Labs., Inc. v. Shalala,* 158 F.3d 1313, 1326 (D.C. Cir. 1998) ("The final preliminary injunction factor, the public interest, . . . is inextricably linked with the merits of the case."). As demonstrated above, Plaintiffs are not likely to succeed on the merits.

Accordingly, Plaintiffs have not met their burden of establishing "that the balance of equities tips in [their] favor, and that an injunction is in the public interest" and therefore, Plaintiffs' motion should be denied. *See Winter*, 555 U.S. at 20.

### D.    Plaintiffs Should Be Ordered to Post Security In Connection With Any Temporary Injunctive Relief.

For the reasons stated above, Defendants submit that the Court can and should deny Plaintiffs' motion in its entirety. However, should the Court be inclined to order any injunctive relief, the Court should also order Plaintiffs to post security. Under Rule 65(c), the Court may issue a preliminary injunction "only if the movant gives security" for "costs and damages sustained" by Defendants if they are later found to "have been wrongfully enjoined." Fed. R. Civ. P. 65(c). In the event the Court issues an injunction here, the Court should require Plaintiffs to post an appropriate bond commensurate with the scope of any injunction. *See DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999) (stating that Rule 65(c) places "broad discretion in the district court to determine the appropriate amount of an injunction bond").

\*    \*    \*

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs'

Amended Complaint and deny their Motion.

Dated: January 29, 2026
      Washington, DC

                                  Respectfully submitted,

                                  JEANINE FERRIS PIRRO
                                  United States Attorney

                                  By: _____ */s/ Sian Jones* _____
                                        SIAN JONES, D.C. Bar #1024062
                                        Assistant United States Attorney
                                        601 D Street, NW
                                        Washington, D.C., 20530
                                        (202) 252-2578

                                  *Attorneys for the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2026, I will cause a copy of the foregoing Motion and

Opposition to be served by United States mail, postage prepaid, upon:

> TONY HOYOS HERNANDEZ
> 3129 W 72 TERRA
> HIALEAH, FL 33018
>
> DANIS ELY ROMERO HERNANDEZ
> 3 HEMLOCK RADIAL PASS UNIT 1
> OCALA, FL 34472
>
> - AND -
>
> GREICEL AVILA LEYVA
> 1961 GOLDEN GATE BLVD E
> NAPLES, FL 34120

                              /s/ *Sian Jones*
                              SIAN JONES
                              Assistant United States Attorney