# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Tony Hoyos Hernandez,

Danis Romero,

Greicel Avila Leyva,

*Plaintiffs,*

v.

Kristi Noem, et al.,

*Defendants.*

Civil Action No. 25-2344 (RBW)

# PLAINTIFFS' OPPOSITION TO DEFENDANTS' COMBINED MOTION TO DISMISS AND REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

# INTRODUCTION

Defendants attempt to recharacterize this action as an unreviewable challenge to discretionary parole. That characterization is incorrect.

This case does not challenge the denial of parole, the weighing of humanitarian factors, or any discretionary judgment. It challenges something antecedent: the failure to operate within the statute that confers discretionary authority in the first place.

Congress enacted distinct detention regimes within the Immigration and Nationality Act. Under 8 U.S.C. § 1225(a)(1), any noncitizen who has not been admitted "shall be deemed" an applicant for admission. That classification occurs by operation of law. It is not discretionary. Defendants now concede that Plaintiffs were applicants for admission governed by § 1225.

Once § 1225 governs, the statutory consequences follow. Section 1225(b) mandates detention of applicants for admission. See Jennings v. Rodriguez, 583 U.S. 281, 294–95

RECEIVED

FEB 25 2026

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

(2018). Congress authorized release of such individuals only through parole under 8 U.S.C. § 1182(d)(5)(A), which must occur on a case-by-case basis. The discretion lies in the decision whether to grant parole—not in whether to operate within the parole statute at all.

Defendants nonetheless processed and released Plaintiffs under 8 U.S.C. § 1226(a)—a provision governing a different category of noncitizens—without invoking § 1182(d)(5), without conducting a parole determination, and without issuing parole documentation. Defendants now acknowledge that § 1226(a) was not the governing statute for applicants for admission. Their own sworn declarations confirm that § 1182(d)(5) was never applied.

Accordingly, Plaintiffs were processed and released under a statute that does not apply to them.

This action does not seek review of a removal order, does not request admission into the United States, and does not ask this Court to second-guess discretionary balancing. Plaintiffs challenge ultra vires agency conduct: the substitution of an inapplicable statute for the one Congress prescribed.

Under settled separation-of-powers principles, agencies possess only the authority Congress confers. Where Congress has drawn statutory lines, the Executive must operate within them. Courts retain jurisdiction to determine whether the Executive has acted within statutory limits. See Chamber of Commerce v. Reich, 74 F.3d 1322, 1327–28 (D.C. Cir. 1996). Section 1252 bars review of discretionary judgments specified by statute; it does not insulate abandonment of the governing statute itself. See Jennings, 583 U.S. at 293–94.

Because Plaintiffs challenge statutory compliance—not discretionary judgment—this Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and the Administrative Procedure Act, which authorizes review of agency action taken "not in accordance with law" and "in excess of statutory jurisdiction." 5 U.S.C. § 706(2)(A), (C). The Mandamus Act, 28 U.S.C. § 1361, provides additional authority to compel compliance with mandatory statutory duties.

The injury is ongoing. The misapplication of § 1226(a) in place of § 1225 and § 1182(d)(5) continues to generate concrete legal consequences, including obstruction of Plaintiffs' Cuban Adjustment Act applications and reliance on an incorrect custody classification. Such collateral legal consequences suffice to establish Article III standing. See Scenic Am., Inc. v. Dep't of Transp., 836 F.3d 42, 49 (D.C. Cir. 2016).

The Executive may exercise discretion within statutory bounds. It may not redefine those bounds.

For these reasons, Defendants' Motion to Dismiss should be denied, and Plaintiffs' request for temporary injunctive relief should be granted.

## DEFENDANTS VIOLATED TWO MANDATORY STATUTARY COMMANDS NEITHER IS DISCRETIONARY.

Defendants attempt to reframe this action as a challenge to discretionary parole. That characterization is legally incorrect. This case concerns the violation of two mandatory statutory commands imposed by Congress. Neither is discretionary.

First, under 8 U.S.C. § 1225(a)(1), any individual who has not been admitted "shall be deemed" an applicant for admission. The Supreme Court has consistently held that when Congress uses the term "shall," it imposes a mandatory directive. See Jennings v.

Rodriguez, 583 U.S. 281, 294 (2018); Lopez v. Davis, 531 U.S. 230, 241 (2001). Classification under § 1225 occurs by operation of law. It is not subject to agency discretion.

Defendants now concede that Plaintiffs were applicants for admission and that § 1225 governs such individuals. That concession fixes the governing statutory framework as a matter of law.

Second, once § 1225 applies, Congress prescribed the detention and release regime that follows. Section 1225(b) mandates detention of applicants for admission. Jennings, 583 U.S. at 294–95. If release occurs, Congress authorized only one mechanism: parole under 8 U.S.C. § 1182(d)(5)(A), which must be exercised on a case-by-case basis. The discretion lies in the outcome of a parole determination—not in whether to operate within the parole statute at all.

Congress created distinct detention regimes for distinct categories of noncitizens. Section 1225 governs arriving applicants. Section 1226 governs admitted or interior noncitizens. The statutory scheme is categorical and sequential.

Defendants nonetheless processed and released Plaintiffs under § 1226(a), without invoking § 1182(d)(5), without conducting any parole determination, and without issuing parole documentation. Defendants now acknowledge that § 1226(a) was not the correct authority for applicants for admission.

That sequence establishes a legal error, not a discretionary judgment.

An agency may exercise discretion only within the bounds of statutory authorization. Discretion cannot exist outside the statute that confers it. See City of Arlington v. FCC,

569 U.S. 290, 297 (2013) (agencies possess only the authority Congress provides); Chamber of Commerce v. Reich, 74 F.3d 1322, 1328 (D.C. Cir. 1996) (executive action inconsistent with statute is unlawful).

Where an agency applies a statute that does not govern, it commits a legal error in excess of statutory authority. Such action is ultra vires and reviewable. See Aid Ass'n for Lutherans v. U.S. Postal Serv., 321 F.3d 1166, 1173 (D.C. Cir. 2003).

This case therefore does not concern how discretion was exercised. It concerns the failure to invoke the governing statute at all and the substitution of an inapplicable one. The question presented is one of statutory authority—a pure question of law—not discretionary balancing.

Plaintiffs do not ask this Court to grant parole or admit them into the United States. They ask only that the Executive operate within the framework Congress enacted. The rule of law requires no less.

## DEFENDANTS' SWORN DECLARATIONS CONFIRM THE STATUTORY VIOLATIONS

Defendants' own sworn declarations eliminate any material factual dispute and confirm the statutory violations alleged in the First Amended Complaint.

In Annex A, Supervisory Detention and Deportation Officer Richard R. Lall declares under penalty of perjury that Plaintiff Tony Hoyos Hernandez entered without inspection, was placed in removal proceedings, was released pursuant to § 1226(a)(2)(B) on Form I-220A, and "has not been paroled pursuant to INA § 212(d)(5)(A)." (Annex A ¶¶ 4–5, 8.)

In Annex B, the same officer confirms identical facts for Plaintiff Greicel Avila Leyva: entry without inspection, placement in § 240 proceedings, release under § 1226(a)(2)(B) via Form I-220A, and no parole under § 1182(d)(5)(A). (Annex B ¶¶ 4–5, 9.)

In Annex C, Supervisory Officer Daniel Vanderploeg confirms that Plaintiff Danis Romero Hernandez entered without inspection, was placed in removal proceedings, was released under § 1226(a)(2)(B), and "was not and has not been paroled pursuant to INA § 212(d)(5)(A)." (Annex C ¶ 6.)

These sworn admissions establish four undisputed facts:

• Plaintiffs entered without admission;

• Plaintiffs were applicants for admission by operation of § 1225(a)(1);

• Plaintiffs were released from custody;

• No § 1182(d)(5) parole determination was made, and § 1226(a) was used instead.

Once these facts are accepted—and they are admitted by Defendants' own officers—the remaining issue is purely legal: whether DHS may substitute § 1226(a) for the statutory framework Congress prescribed under § 1225 and § 1182(d)(5).

Where material facts are undisputed and the dispute concerns only whether the agency acted within statutory bounds, the question presented is one of law. See Oryszak v. Sullivan, 576 F.3d 522, 525 (D.C. Cir. 2009).

Because the statutory release mechanism in § 1182(d)(5) was never invoked, no discretionary act occurred. Discretion presupposes operation within the statute that confers it. An agency cannot claim the protection of discretionary-review bars where it

never acted under the governing statute. See Aid Ass'n for Lutherans v. USPS, 321 F.3d
1166, 1173 (D.C. Cir. 2003).

This case therefore does not challenge the denial of parole or the outcome of any
discretionary balancing. It challenges the failure to invoke the only statute authorizing
release and the application of one that does not govern. That is ultra vires action
reviewable under the Administrative Procedure Act, 5 U.S.C. § 706(2)(C), and the
Mandamus Act, 28 U.S.C. § 1361.

Far from undermining Plaintiffs' claims, Defendants' sworn declarations confirm them.
They establish that § 1182(d)(5) was never applied and that release occurred under an
inapplicable statutory provision.

## THE GOVERNMENT HAS ALREADY CONCEDED THE GOVERNING STATUTE IN FEDERAL APPELLATE LITIGATION

The Government's position in this case is not occurring in isolation. In federal appellate
litigation involving similarly situated applicants for admission, the Government has
formally reversed its prior reliance on § 1226 and acknowledged that § 1225 governs
individuals who enter without admission.

In Irela Labrada-Hechavarria v. U.S. Attorney General, the Eleventh Circuit
documented that the Government initially defended detention under § 1226(a), but
subsequently filed a notice of supplemental authority reversing its position and asserting
that the petitioners had been detained pursuant to § 1225(a), which it described as "the
only provision that is possibly applicable in circumstances like these."

The Eleventh Circuit vacated the BIA's decisions and remanded for further proceedings in light of that change in position.

This formal concession is significant. It confirms that the governing statutory framework for applicants for admission is fixed by § 1225—not § 1226. Once that framework is acknowledged, the Executive lacks authority to process or release such individuals under an inapplicable statutory provision.

The issue presented here is therefore not novel and not discretionary. The Government has already recognized in federal court that § 1225 governs applicants for admission. Where the governing statute is conceded, agency action taken under a different provision constitutes legal error in excess of statutory authority.

This Court's task is not to second-guess discretionary judgments, but to determine whether the Executive acted within the statutory limits Congress prescribed. The Government's own appellate concession confirms that those limits are defined by § 1225 and its associated release mechanism under § 1182(d)(5).

# THIS COURT HAS SUBJECT-MATTER JURISDICTION
## A. Section 1252(b)(9) Does Not Bar This Action

Section 1252(b)(9) is a channeling provision. It consolidates review of questions "arising from" removal proceedings into petitions for review of final removal orders. It does not convert every dispute touching immigration enforcement into an unreviewable matter.

The Supreme Court has repeatedly rejected expansive interpretations of § 1252(b)(9). In Jennings v. Rodriguez, the Court held that the provision does not bar claims that are independent of, or collateral to, the removal process. 583 U.S. 281, 293–94 (2018).

Likewise, in INS v. St. Cyr, the Court warned against construing jurisdiction-stripping provisions to foreclose review of legal and constitutional claims absent a clear and unambiguous command from Congress. 533 U.S. 289, 313 (2001).

Plaintiffs do not challenge a removal order. They do not seek termination of proceedings. They do not ask this Court to review any immigration judge's ruling. Their claim concerns a distinct and antecedent issue: whether DHS acted within statutory authority when it classified and released them under § 1226(a) rather than the framework prescribed by § 1225 and § 1182(d)(5).

That question arises at the moment of custody classification and release. It is logically and legally anterior to any final removal order. It does not require review of removal proceedings, nor does it interfere with the jurisdiction of the immigration courts.

The D.C. Circuit has recognized that district courts retain jurisdiction over collateral challenges to statutory authority even where removal proceedings are pending. See Meza v. Renaud, 9 F.4th 930, 936–37 (D.C. Cir. 2021). Where the dispute concerns the scope of agency power—not the correctness of a removal decision—§ 1252(b)(9) does not apply.

Nor does this case implicate Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103 (2020). Plaintiffs do not seek habeas review of expedited removal or judicial reconsideration of admissibility determinations. They seek only compliance with the detention and release statute Congress enacted.

Section 1252(b)(9) does not bar review of ultra vires agency action. To hold otherwise would permit the Executive to evade judicial review simply by linking unlawful

statutory conduct to ongoing removal proceedings. The Supreme Court has expressly rejected such an overbroad construction. Jennings, 583 U.S. at 293–94.

This Court therefore has jurisdiction under 28 U.S.C. § 1331 to determine whether DHS acted within the limits Congress prescribed.

## B. Section 1252(a)(2)(B)(ii) Does Not Apply

Defendants invoke the discretionary bar of 8 U.S.C. § 1252(a)(2)(B)(ii). That provision strips jurisdiction only over decisions that Congress has "specified" to be within the Secretary's discretion.

The Supreme Court has made clear that § 1252(a)(2)(B)(ii) is narrow and applies only where the statute itself explicitly commits the decision to agency discretion. See Kucana v. Holder, 558 U.S. 233, 246–47 (2010). Courts do not infer discretion; Congress must clearly specify it.

Plaintiffs do not challenge a discretionary denial of parole. They do not contest the weighing of factors. They do not ask this Court to review the substance of any parole determination.

They challenge something more fundamental: the failure to invoke the statute that authorizes parole at all.

Section 1182(d)(5)(A) permits parole "only on a case-by-case basis." The discretionary component lies in the decision whether to grant or deny parole. But the requirement that release, if it occurs, proceed under § 1182(d)(5) is not discretionary. Congress did not authorize DHS to bypass § 1182(d)(5) and instead release applicants for admission under § 1226(a).

Where an agency acts outside the statutory framework that confers discretionary authority, § 1252(a)(2)(B)(ii) does not shield that conduct from review. See Chamber of Commerce v. Reich, 74 F.3d 1322, 1328 (D.C. Cir. 1996); Aid Ass'n for Lutherans v. USPS, 321 F.3d 1166, 1173 (D.C. Cir. 2003).

Discretion presupposes statutory authorization. An agency cannot insulate ultra vires conduct by labeling it discretionary. Here, Defendants concede that § 1226(a) was not the governing statute for applicants for admission. Once that concession is made, the issue is purely whether the agency acted within statutory bounds.

Section 1252(a)(2)(B)(ii) protects discretionary judgments exercised within the statute Congress enacted. It does not protect the substitution of an inapplicable statute or the abandonment of the governing one.

Accordingly, neither § 1252(b)(9) nor § 1252(a)(2)(B)(ii) deprives this Court of jurisdiction.

## PLAINTIFFS HAVE STANDING

**Plaintiffs satisfy Article III standing.**

To establish standing, Plaintiffs must demonstrate (1) a concrete and particularized injury in fact, (2) traceability, and (3) redressability. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992). Each element is met here.

# Injury in Fact

Each Plaintiff has a pending application for adjustment of status under the Cuban Adjustment Act and has paid the required filing fees. While adjustment of status is

discretionary, the right to have a properly filed application adjudicated under lawful statutory procedures is not. See INS v. St. Cyr, 533 U.S. 289, 307–08 (2001).

Because Defendants failed to invoke 8 U.S.C. § 1182(d)(5) at the time of release, Plaintiffs' records lack the parole classification required under the statutory framework governing applicants for admission. That classification directly affects eligibility determinations and adjudicatory processing.

USCIS has refused or delayed adjudication based on the custody classification generated under § 1226(a). The resulting obstruction of adjudication constitutes a present and ongoing legal injury. See Scenic Am., Inc. v. Dep't of Transp., 836 F.3d 42, 49 (D.C. Cir. 2016).

Plaintiffs are not alleging speculative future harm. They face immediate legal consequences stemming from the agency's admitted statutory misclassification.

## Traceability

The injury is directly traceable to Defendants' conduct. DHS processed and released Plaintiffs under § 1226(a) rather than under § 1225 and § 1182(d)(5). The absence of parole documentation—and the resulting obstruction of adjudication—flows directly from that statutory substitution.

This causal chain is neither speculative nor attenuated. It arises from Defendants' own sworn admissions that § 1182(d)(5) was never invoked. See Tozzi v. U.S. Dep't of Health & Human Servs., 271 F.3d 301, 308 (D.C. Cir. 2001).

### Redressability

Redressability does not require certainty of ultimate immigration relief. It requires only that the requested relief is likely to alleviate the injury. Lujan, 504 U.S. at 561.

Plaintiffs seek a declaration that § 1225 governed their detention and that release could occur only pursuant to § 1182(d)(5), and an order requiring correction of the unlawful custody classification.

Such relief would remove the legal obstacle currently preventing adjudication under the proper statutory framework. That is sufficient for Article III redressability. See Massachusetts v. EPA, 549 U.S. 497, 526 (2007).

Plaintiffs seek restoration of lawful statutory processing—not a guaranteed immigration outcome. Article III requires no more.

## DISMISSAL UNDER RULE 12(b)(6) IS IMPROPER; PLAINTIFFS STATE CLAIMS UNDER THE APA, MANDAMUS ACT, AND THE FIFTH AMENDMENT

A Rule 12(b)(6) motion tests only the legal sufficiency of the complaint. The Court must accept well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiffs' favor. Iqbal, 556 U.S. at 678.

Plaintiffs allege that:

• They were applicants for admission governed by § 1225;

• § 1225(b) mandates detention;

• Release of such detainees may occur only under § 1182(d)(5);

• Defendants instead released them under § 1226(a);

• No § 1182(d)(5) determination was made; and

• Their adjustment applications remain obstructed as a result.

Defendants' own sworn declarations confirm these facts.

Accepting these allegations as true, Plaintiffs have plausibly alleged that DHS acted under an inapplicable statute and in excess of statutory authority. That is sufficient to state claims under the APA, the Mandamus Act, and the Fifth Amendment.

## A. APA Claims Are Plausibly Alleged

### § 706(1) — Agency Action Unlawfully Withheld

Section 1225(b) imposes a mandatory detention command. Jennings v. Rodriguez, 583 U.S. 281, 294–95 (2018). Section 1182(d)(5) authorizes release only through case-by-case parole.

Where a statute imposes a mandatory duty, failure to follow that command constitutes agency action "unlawfully withheld" under 5 U.S.C. § 706(1). See Norton v. S. Utah Wilderness All. (SUWA), 542 U.S. 55, 63–65 (2004) (APA claim lies where plaintiff identifies a discrete, mandatory duty).

Plaintiffs identify a discrete statutory duty: if DHS releases a § 1225(b) detainee, it must do so pursuant to § 1182(d)(5). Plaintiffs allege that DHS did not invoke that statute at all. That is precisely the type of failure-to-follow-a-mandatory-command claim cognizable under § 706(1).

This is not a request for the Court to supervise discretionary decision-making. It is a request to compel compliance with a statutory command.

## § 706(2)(C) — Action in Excess of Statutory Authority

Defendants admit that § 1226(a) does not govern applicants for admission. Plaintiffs were nonetheless processed and released under § 1226(a).

Agency action taken under a statute that does not apply is action "in excess of statutory jurisdiction [or] authority" and must be set aside under § 706(2)(C). See City of Arlington v. FCC, 569 U.S. 290, 297 (2013) (agency authority derives solely from Congress); Chamber of Commerce v. Reich, 74 F.3d 1322, 1328 (D.C. Cir. 1996).

Plaintiffs plausibly allege precisely that.

## § 706(2)(A) — Arbitrary and Capricious

Substituting an inapplicable detention statute for the one Congress mandated, generating records inconsistent with statutory requirements, and relying on post hoc rationalizations to justify prior misclassification constitute agency action "not in accordance with law." 5 U.S.C. § 706(2)(A).

An agency must operate within the statutory framework Congress enacted. Failure to do so is arbitrary and capricious. See Motor Vehicle Mfrs. Ass'n v. State Farm, 463 U.S. 29, 43 (1983).

Plaintiffs' allegations easily clear the plausibility threshold.

## B. Mandamus Is Properly Pleaded

Mandamus lies where (1) the plaintiff has a clear right to relief, (2) the defendant has a clear duty to act, and (3) no adequate alternative remedy exists. See 28 U.S.C. § 1361; see also Heckler v. Ringer, 466 U.S. 602, 616 (1984).

Plaintiffs have a clear right to be processed under the statute that governs applicants for admission. DHS has a clear, nondiscretionary duty to operate within statutory limits. Agencies "possess only the authority Congress has provided." City of Arlington, 569 U.S. at 297.

No administrative mechanism exists to retroactively correct a misapplied detention statute where the governing parole provision was never invoked. Absent judicial intervention, the statutory violation persists.

At the pleading stage, Plaintiffs have plausibly alleged each element required for mandamus relief.

## C. Plaintiffs State a Procedural Due Process Claim

Plaintiffs do not assert a constitutional right to admission. See Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103 (2020). They assert a right to be processed in accordance with governing statutes and a legally cognizable interest in the adjudication of properly filed and paid immigration applications.

While adjustment of status is discretionary, statutory eligibility determinations and the right to lawful adjudicatory procedures carry legal significance. See INS v. St. Cyr, 533 U.S. 289, 307–08 (2001).

Where the government fails to follow mandatory statutory procedures and that failure obstructs adjudication of paid applications, a procedural due process claim is stated. See Mathews v. Eldridge, 424 U.S. 319, 332 (1976) (due process protects against deprivation of protected interests without lawful procedure).

At minimum, Plaintiffs plausibly allege deprivation of a procedural entitlement created by statute.

## D. The Complaint Easily Survives Twombly and Iqbal

This case does not rest on conclusory assertions. It rests on:

• Statutory text;

• Undisputed custody classification;

• Sworn declarations from Defendants' own officers; and

• Admitted reliance on an inapplicable statute.

Plaintiffs allege specific statutory provisions, specific agency actions, and specific resulting harm. That is more than sufficient to state a plausible claim for relief.

This case presents a concrete legal dispute over statutory compliance. Because Plaintiffs have alleged facts that, if proven, entitle them to relief under the APA, the Mandamus Act, and the Fifth Amendment, dismissal under Rule 12(b)(6) is improper.

## THE TRO STANDARD IS SATISFIED

A temporary restraining order is warranted where Plaintiffs demonstrate (1) a likelihood of success on the merits, (2) irreparable harm absent relief, (3) that the balance of equities favors relief, and (4) that an injunction is in the public interest. Winter v. Nat. Res. Def. Council, 555 U.S. 7, 20 (2008). In cases involving the federal government, the balance-of-equities and public-interest factors merge. Nken v. Holder, 556 U.S. 418, 435 (2009).

Plaintiffs satisfy all four factors.

# I. Likelihood of Success on the Merits

Plaintiffs have demonstrated a strong likelihood of success.

Defendants concede that Plaintiffs were applicants for admission governed by § 1225 and that § 1226(a) was not the governing statute. Jennings v. Rodriguez confirms that § 1225(b) mandates detention. 583 U.S. 281, 294–95 (2018). Congress authorized release of § 1225 detainees only through § 1182(d)(5) on a case-by-case basis.

Defendants' own sworn declarations confirm that § 1182(d)(5) was never invoked.

Where agency action is taken under a statute that does not apply, it is ultra vires and invalid under the APA. See City of Arlington v. FCC, 569 U.S. 290, 297 (2013); 5 U.S.C. § 706(2)(C).

Because Plaintiffs challenge statutory noncompliance—not discretionary weighing— they have demonstrated a substantial likelihood of success.

# II. Irreparable Harm

Irreparable harm must be "both certain and great" and "beyond remediation." Wis. Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985).

Plaintiffs face ongoing harm absent relief:

• Continued exposure to detention based on an unlawful custody classification;

• Obstruction of their Cuban Adjustment Act applications due to defective statutory processing;

• Loss of statutory opportunities tied to lawful parole classification.

Loss of a statutory immigration benefit or eligibility that cannot later be reconstructed constitutes irreparable harm. See Sampson v. Murray, 415 U.S. 61, 90 (1974) (harm is irreparable where it cannot be adequately remedied later); see also Nken, 556 U.S. at 435 (removal before judicial review constitutes irreparable injury).

The harm here is not speculative. Plaintiffs' applications remain obstructed now. Records generated under an unlawful statutory framework continue to produce legal consequences. Monetary damages cannot remedy the loss of lawful immigration processing or the risk of enforcement under an invalid classification.

This satisfies the D.C. Circuit's irreparable-harm standard.

## III. Balance of Equities

Plaintiffs seek narrow relief: correction of statutory classification and protection from adverse enforcement action pending adjudication. They do not seek immediate admission, parole, or immigration benefits.

The Government suffers no legally cognizable harm from being required to comply with the statutory framework Congress enacted. "[T]here is generally no public interest in the perpetuation of unlawful agency action." League of Women Voters v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016).

By contrast, Plaintiffs face ongoing legal injury absent relief.

The equities therefore strongly favor Plaintiffs.

## IV. Public Interest

When the Government is a party, the balance of equities and public interest merge. Nken, 556 U.S. at 435.

The public has a compelling interest in ensuring that federal agencies operate within statutory limits. See Chamber of Commerce v. Reich, 74 F.3d 1322, 1333 (D.C. Cir. 1996). The Executive may exercise discretion within the authority Congress grants—but not beyond it.

Ensuring accurate immigration records, lawful custody classifications, and adherence to statutory mandates promotes, rather than undermines, the public interest.

## V. Equitable Authority

Federal courts retain equitable authority to enjoin unlawful executive action. See Weinberger v. Romero-Barcelo, 456 U.S. 305, 313 (1982). Where a statutory violation is likely and ongoing harm is established, temporary injunctive relief is appropriate to preserve the status quo pending final adjudication.

## CONCLUSION

Defendants attempt to recast a straightforward statutory violation as an unreviewable exercise of discretion. It is neither.

This case does not ask the Court to second-guess a parole decision, review a removal order, or compel admission into the United States. It asks a narrower and more fundamental question: whether the Executive may disregard the statutory framework Congress enacted and substitute an inapplicable one.

Defendants concede that Plaintiffs were applicants for admission governed by 8 U.S.C. § 1225. They concede that § 1226(a) was not the governing statute. Their own sworn declarations confirm that no parole determination under § 1182(d)(5) was made. Once those admissions are accepted, the legal conclusion follows: Plaintiffs were processed and released outside the statutory framework Congress mandated.

Such action is ultra vires. Ultra vires action is reviewable. Section 1252 does not insulate the abandonment of a governing statute. The Administrative Procedure Act expressly authorizes courts to set aside agency action taken "in excess of statutory jurisdiction" and "not in accordance with law." 5 U.S.C. § 706(2)(A), (C).

Plaintiffs have established jurisdiction, standing, and plausible claims for relief. They have also demonstrated a likelihood of success on the merits and irreparable harm sufficient to warrant temporary injunctive relief.

The Executive may exercise discretion within statutory bounds. It may not redefine those bounds.

For these reasons, Defendants' Motion to Dismiss should be denied in its entirety, and Plaintiffs' request for a Temporary Restraining Order should be granted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1. **Deny Defendants' Motion to Dismiss in its entirety;**

2. **Declare**, pursuant to 28 U.S.C. § 2201 and 5 U.S.C. § 706, that Plaintiffs were and are governed by 8 U.S.C. § 1225 as applicants for admission and that any release of such individuals must occur, if at all, pursuant to 8 U.S.C. § 1182(d)(5);

3. **Declare** that Defendants' use of 8 U.S.C. § 1226(a) to process and release Plaintiffs was ultra vires, in excess of statutory authority, and not in accordance with law;

4. **Issue a Temporary Restraining Order and Preliminary Injunction** preserving the status quo and prohibiting Defendants from taking

adverse enforcement action against Plaintiffs based solely on the challenged

custody classification while this action is pending;

5. **Order Defendants to correct Plaintiffs' custody classification records** to

reflect the governing statutory framework and to adjudicate Plaintiffs' pending

applications in accordance with lawful statutory standards;

6. **Grant such other and further relief** as the Court deems just and proper.


Respectfully submitted,

/s/ Tony Hoyos Hernández                    /s/ Danis Ely Romero

Tony Hoyos Hernández.                        Danis Ely Romero Hernández
3 Hemlock Radial Pass Unit 1                 3129 W 72 Terra
Ocala, Florida 34472                         Hialeah, Florida 33018
Tel.: (786) 835-3240                         Tel.: (352) 890-4356
Email: tony.hoyos8789@gmail.com              Email: danisely26@gmail.com


/s/ Greicel Ávila-Leyva

Greicel Ávila-Leyva
1961 Golden Gate Blvd E
Naples, Florida 34120
Tel.: (239) 784-3389
Email: avilagreicel@gmail.com

# Annex A

**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 23-13664

_____

IRELA LABRADA-HECHAVARRIA,
GABRIELA PEREZ-LABRADA,

                                                                                    *Petitioners,*

*versus*

U.S. ATTORNEY GENERAL,

                                                                                    *Respondent.*

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A220-284-514

_____

_____

No. 24-10645

_____

2                    Opinion of the Court                    24-10645

SAUL ENRIQUE CASTILLO-CASANOVA,
YANEXI ARENCIBIA-BORGES,
ALESSANDRO CASTILLO-ARENCIBIA,

                                                    *Petitioners,*

*versus*

U.S. ATTORNEY GENERAL,

                                                    *Respondent.*

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A220-371-590

_____

Before JORDAN and MARCUS, Circuit Judges, and JONES,* District
Judge.

PER CURIAM:

These immigration cases arise out of removal proceedings
against two familial groups of petitioners—Irela Labrada-Hecha-
varria and her daughter, Gabriela Perez-Labrada (the first family
group), and Saul Enrique Castillo-Casanova, Yanexi Arencibia-Bor-
ges, and Alesandro Castillo-Arencibia (the second family group).
All are Cuban nationals who entered the United States without
documentation. After their entry, they were briefly detained by the
Department of Homeland Security before being released.

_____

* The Honorable Steve C. Jones, United States District Judge for the Northern
District of Georgia, sitting by designation.

24-10645                Opinion of the Court                3

I

The questions in these cases revolve around the statutory bases for the petitioners' detention and subsequent release. We summarize the procedural history for each group of petitioners below.

**Irela Labrada-Hechavarria and Gabriela Perez-Labrada.** An immigration judge ordered these petitioners removed. *See* A.R. 50–51. As relevant here, the IJ ruled that the petitioners were not eligible for adjustment of status under the Cuban Adjustment Act, Pub. L. No. 89-732, 80 Stat. 1161 (Nov. 2, 1966), because release on their own recognizance did not constitute a grant of parole that would permit such adjustment. *See* A.R. 45. The Board of Immigration Appeals, in a single-judge order, dismissed the petitioners' appeal. *See* A.R. 502. The BIA concluded that the petitioners had been detained by the government pursuant to 8 U.S.C. § 1226(a) and had been released on their own recognizance. Because they had not been inspected, admitted, or granted parole, they were not eligible for adjustment of status under the CAA. *See* A.R. 502-03 (relying on *Matter of Cabrera-Fernandez*, 28 I. & N. Dec. 747, 749-50 (BIA 2023)).

**Saul Enrique Castillo-Casanova, Yanexi Arencibia-Borges, and Alesandro Castillo-Arencibia.** An immigration judge ordered these petitioners removed. *See* A.R. 62–64. As relevant here, the IJ ruled that the petitioners were not eligible for adjustment of status under the CAA because they had not been admitted and release on their own recognizance did not constitute a grant of parole

4                    Opinion of the Court                    24-10645

that would permit such adjustment. *See* A.R. 96–97. The BIA
dismissed the petitioners' appeal, ruling that under *Matter of
Cabrera-Hernandez* the petitioners' release on their own recogni-
zance did not constitute a grant of parole. *See* A.R. 5.

## II

The petitioners now seek review of the BIA's decisions in
their respective cases. In their initial briefs, they argued that they
had been detained pursuant to 8 U.S.C. § 1225(a) as applicants for
admission and then granted parole. As a result, they say, they are
eligible for adjustment of status under the CAA. *See* Petitioners' In-
itial Br. in Labrada-Hechavaria at 12–41; Petitioners' Initial Br. in
Castillo-Casanova at 12–41. The government, in its answer briefs,
argued (1) that we lack jurisdiction to review the DHS' discretion-
ary § 1226 determination under 8 U.S.C. § 1252(g), and (2) alterna-
tively on the merits that the BIA correctly determined that the pe-
titioners were detained pursuant to § 1226(a). *See* Government's
Answer Br. in Labrada-Hechavaria at 15–46; Government's Answer
Br. in Castillo-Casanova at 16–48.

In July of 2025, before we heard oral argument, the govern-
ment filed a notice of supplemental authority. *See, e.g.,* D.E. 31. In
that notice, the government reversed its position and asserted that
the petitioners had been detained pursuant to § 1225(a), which in
its view is the only provision that is possibly applicable in circum-
stances like these. Despite its about-face on the legal issue before
us, the government still argued that the petitions should be denied
because the petitioners simply benefited from a mistake on the part

of the DHS and should not benefit from that error now. *See id.* at 2. The petitioners, on the other hand, maintained that they were detained pursuant to § 1225(a) and are therefore eligible for adjustment of status under the CAA. *See, e.g.,* D.E. 32 at 2.

### III

After reviewing the record, and with the benefit of oral argument, we conclude that we have jurisdiction, vacate the BIA's orders in the two cases, and remand for further proceedings.

We have jurisdiction. Although 8 U.S.C. § 1252(g) is a jurisdiction-stripping provision, we continue to have jurisdiction to address the main legal question presented here—whether the petitioners were detained pursuant to § 1225(a) or § 1226(a). We have held that § 1252(g) is construed "narrowly" and that we "apply it to preclude '[e]fforts to challenge the refusal to exercise [favorable] discretion on behalf of specific aliens,' as well as those claims that would lead to 'the deconstruction, fragmentation, and hence prolongation of removal proceedings.'" *Alvarez v. U.S. Immigr. & Customs Enf't,* 818 F.3d 1194, 1205 (11th Cir. 2016) (citations omitted). Neither of those two situations are presented here by the § 1225(a)/§ 1226(a) question.

For a number of reasons, we believe the best resolution is to vacate the BIA's decisions that the petitioners in these two cases were detained pursuant to § 1226(a) and therefore are ineligible for adjustment of status under the CAA. First, the government has changed its position as to which statute governed the petitioners' detention, and it now agrees with the petitioners that they were

6                    Opinion of the Court                    24-10645

detained under § 1225(a). Second, the BIA, following its ruling in these cases, has issued precedential decisions on the scope of § 1225(a), and those decisions may inform its disposition of the petitioners' argument that they are eligible for adjustment of status. *See, e.g., Matter of Q. Li*, 29 I. & N. Dec. 66, 67–68 (BIA May 15, 2025); *Matter of Hurtado*, 29 I. & N. Dec. 216, 225 (BIA Sept. 5, 2025). Third, the federal appellate courts are divided as to the applicability of §§ 1225(a) and 1226(a). *Compare, e.g., Buenrostro-Mendez v. Bondi*, --- F.4th ----, 2026 WL 323330, *4–9 (5th Cir. Feb. 6, 2026) (2-1 decision), *with, e.g., Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061–62 (7th Cir. 2025) (preliminary injunction appeal). Fourth, the majority of district courts to have addressed this issue have rejected the government's new position—that all noncitizens who came into the United States illegally but are living in the United States must now be detained under § 1225(a) until their removal proceedings are completed. *See Barco Mercado v. Francis*, No. 25-CV-6582, 2025 WL 3295903, *4 (S.D.N.Y. Nov. 26, 2025) (noting that the government has been challenged in at least 362 similar cases in federal district court and that 350 of those cases, decided by over 160 judges, have resolved this same issue against the government).

**PETITIONS GRANTED AND CASES REMANDED TO THE BIA FOR FURTHER PROCEEDINGS.**

# Annex B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TONY HOYOS HERNANDEZ, et al.,

Plaintiffs,

v.

KRISTI NOEM, Secretary of the U.S.
Department of Homeland Security, et al.,

Defendants.

Civil Action No. 25-2344 (RBW)

## DECLARATION OF SUPERVISORY DETENTION AND DEPORTATION OFFICER RICHARD R. LALL

I, Richard R. Lall, declare the following under 28 U.S.C. § 1746 and state under the penalty of perjury the following is true and correct to the best of my knowledge and belief:

1.    I am a Supervisory Detention and Deportation Officer (SDDO) for the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO) at the ICE ERO Miami field office in Miramar, Florida.  I have been employed by ICE since August 2, 2009.

2.    My responsibilities as an SDDO include supervision of officers responsible for the review of non-detained aliens' cases. The officers follow the aliens' cases on a non-detained docket and ensure that the aliens comply with any reporting requirements and court orders related to their immigration cases.

3.    I provide this declaration based on my personal knowledge, belief, reasonable inquiry, and information obtained from various records, systems, databases, other DHS employees,

employees of DHS contract facilities, and information portals maintained and relied upon by DHS in the regular course of business.

4.      Petitioner Hoyos Hernandez was encountered by U.S. Customs and Border Protection officials at or near El Paso, Texas on February 24, 2022, after he unlawfully entered the United States from Mexico, at a time and place other than as designated by the Secretary of the Department of Homeland Security. Hoyos Hernandez was encountered by Customs and Border Protection ("CBP") officers and processed for removal proceedings pursuant to INA § 240, 8 U.S.C. §1229a ("240 Proceedings").

5.      On March 1, 2022, Hoyos Hernandez was released pursuant to an Order of Recognizance, pursuant to INA § 236(a)(2)(B) of the Immigration and Nationality Act, codified at 8 U.S.C. § 1226(a)(2)(B).  He was also served a Notice to Appear pursuant to 8 U.S.C. § 1229(a) or section 240 of the Immigration and Nationality Act (INA), and an I-200 administrative warrant.

6.      On June 28, 2024, Hoyos Hernandez filed a motion to terminate removal proceedings with the immigration court in Miami, Florida.

7.      The immigration judge denied Hoyos Hernandez's motion to terminate on July 9, 2024.  Hoyos Hernandez is scheduled to appear before the immigration court in Miami, Florida, on a non-detained docket, on November 8, 2027.

8.  DHS records reflect that Hoyos Hernandez has not been paroled pursuant to INA§ 212(d)(5)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1182(d)(5)(A).


*   *   *

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the statements made in the foregoing declaration are true and correct to the best of my knowledge and information.

Dated: August 28, 2025                    Respectfully submitted,

/s/    RICHARD R LALL    Digitally signed by RICHARD R LALL
                        Date: 2025.08.28 11:37:03 -04'00'

RICHARD R. LALL

# Annex C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TONY HOYOS HERNANDEZ, et al.,

Plaintiffs,

v.

KRISTI NOEM, Secretary of the U.S.
Department of Homeland Security, et al.,

Defendants.

Civil Action No. 25-2344 (RBW)

## DECLARATION OF SUPERVISORY DETENTION AND DEPORTATON OFFICER RICHARD R. LALL

I, Richard R. Lall, declare the following under 28 U.S.C. § 1746 and state under the penalty of perjury the following is true and correct to the best of my knowledge and belief:

1.    I am a Supervisory Detention and Deportation Officer (SDDO) for the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO) at the ICE ERO Miami field office in Miramar, Florida.  I have been employed by ICE since August 2, 2009.

2.    My responsibilities as an SDDO include supervision of officers responsible for the review of non-detained aliens' cases. The officers follow the aliens' cases on a non-detained docket and ensure that the aliens comply with any reporting requirements and court orders related to their immigration cases.

3.    I provide this declaration based on my personal knowledge, belief, reasonable inquiry, and information obtained from various records, systems, databases, other DHS employees, employees of DHS contract facilities, and information portals maintained and relied upon by DHS

in the regular course of business. Petitioner Avila Leyva entered the United States at or near Eagle Pass, Texas, without inspection on or about August 25, 2022.

 4. Avila Leyva was encountered by Customs and Border Protection ("CBP") officers and placed in removal proceedings pursuant to INA § 240, 8 U.S.C. §1229a.

 5. On the same date, Avila Leyva was released by way of an Order of Recognizance, Form I-220A, pursuant to INA § 236(a)(2)(B) of the Immigration and Nationality Act, codified at 8 U.S.C. § 1226(a)(2)(B). He was also served with a Notice to Appear and an I-200 administrative warrant.

 6. On June 17, 2024, Avila Leyva appeared before an immigration judge in Miami, FL and requested a continuance of removal proceedings to obtain an attorney. The immigration judge granted the motion and adjourned the case to March 24, 2026.

 7. On June 16, 2025, an immigration judge in Miami, Florida denied Avila Leyva's motion to terminate proceedings to adjust his status pursuant to the Cuban Adjustment Act ("CAA"). Avila Leyva has a pending CAA application with USCIS.

 8. Avila Leyva's removal proceedings before the immigration court in Miami, Florida are pending. He is not detained.

 9. DHS records reflect that Avila Leyva has not been paroled pursuant to INA§ 212(d)(5)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1182(d)(5)(A).

 Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the statements made in the foregoing declaration are true and correct to the best of my knowledge and information.

Dated: August 28, 2025     Respectfully submitted,

             /s/ RICHARD R LALL Digitally signed by RICHARD R LALL
                            Date: 2025.08.28 11:31:42 -04'00'
             RICHARD R. LALL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TONY HOYOS HERNANDEZ, et al.,

Plaintiffs,

v.

KRISTI NOEM, Secretary of the U.S.
Department of Homeland Security, et al.,

Defendants.

Civil Action No. 25-2344 (RBW)

## DECLARATION OF SUPERVISORY DETENTION AND DEPORTATION OFFICER DANIEL VANDERPLOEG

I, Daniel Vanderploeg, declare the following under 28 U.S.C. § 1746 and state under the penalty of perjury the following is true and correct to the best of my knowledge and belief:

1.    I am a Supervisory Detention and Deportation Officer with the U.S. Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO) at the Miami Field Office, Orlando Sub-Office, located in Orlando, Florida. I have been employed by ICE since January 4, 2009.

2.    My responsibilities as an SDDO include overseeing at-large and criminal cases. In that capacity, I supervise Deportation Officers who review and manage alien files, and coordinate apprehension and detention.

3.    I provide this declaration based on my personal knowledge, belief, reasonable inquiry, and information obtained from various records, systems, databases, other DHS employees, employees of DHS contract facilities, and information portals maintained and relied upon by DHS in the regular course of business.

4.      Petitioner Romero Hernandez entered the United States without inspection near San Luis, Arizona, on or about June 17, 2022.

5.      On that same day, Romero Hernandez was detained pursuant to warrant, and DHS issued a Notice to Appear placing Romero Hernandez in removal proceedings pursuant to 8 U.S.C. § 1229(a) or section 240 of the Immigration and Nationality Act (INA) as well as an I-200 administrative warrant.

6.      Also on June 17, 2022, DHS released Romero Hernandez from custody on an Order of Release on Recognizance pursuant to § 236(a)(2)(B) codified at 8 U.S.C. § 1226(a)(2)(B).  DHS records reflect that Romero Hernandez was not and has not been paroled into the United States pursuant to INA§ 212(d)(5)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1182(d)(5)(A).

7.      Romero Hernandez is not currently in ICE detention, and his removal proceedings are pending before the Orlando Immigration Court. The next scheduled Master Calendar hearing is February 17, 2026.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the statements made in the foregoing declaration are true and correct to the best of my knowledge and information.


Dated: August 29, 2025                    Respectfully submitted,

DANIEL P                Date: 2025.08.29
VANDERPLOEG         07:53:42 -04'00'

Daniel P. Vanderploeg