**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| TONY HOYOS HERNANDEZ, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 25-2344 (RBW) |
| | ) | |
| MARKWAYNE MULLIN,[1] | ) | |
| in his official capacity as Secretary of the | ) | |
| United States Department of Homeland | ) | |
| Security, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**<u>MEMORANDUM OPINION</u>**

The plaintiffs, Tony Hoyos-Hernández, Danis Ely Romero-Hernández, and Greicel Ávila

Leyva, bring this civil action against the defendants, Markwayne Mullin, the Secretary of the

United States Department of Homeland Security ("DHS"); the DHS itself; and two components

of the DHS—the United States Immigration and Customs Enforcement ("ICE") and the United

States Citizenship and Immigration Services ("USCIS") (collectively, the "defendants")—

seeking declaratory and injunctive relief pursuant to the Mandamus Act, 28 U.S.C. § 1361; the

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702–06; the Declaratory Judgment Act, 28

U.S.C. § 2201; and the Due Process Clause of the Fifth Amendment to the United States

Constitution, U.S. Const. amend. V.[2]  <u>See</u> First Amended Complaint and Petition for Writ of

---

[1] Markwayne Mullin, Secretary of Homeland Security, is automatically substituted for his predecessor, Kristi Noem, pursuant to Federal Rule of Civil Procedure 25(d).

[2] Although the plaintiffs' original Complaint also named United States President Donald J. Trump and unnamed officers of Enforcement and Removal Operations as defendants, the plaintiffs' Amended Complaint no longer lists these parties as defendants and thus the Court need not address them in this Memorandum Opinion.  <u>Compare</u> Complaint at 1, ECF No. 1, <u>with</u> First Amended Complaint and Petition for Writ of Mandamus and Temporary Restraining Order (TRO), and Declaratory Relief ("Am. Compl.") at 5–6, ECF No. 17.

Mandamus and Temporary Restraining Order (TRO), and Declaratory Relief ("Am. Compl.") at

4–5, 12–17, ECF No. 17.[3]  Currently pending before the Court are: (1) the plaintiffs' amended

motion for a temporary restraining order, see generally Plaintiffs' Emergency Motion for

Temporary Restraining Order ("Pls.' Mot."), ECF No. 18;[4] and (2) the defendant's motion to

dismiss the plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1)

and 12(b)(6), see generally Defendants' Combined Motion to Dismiss and Memorandum in

Support Thereof and Opposition to Plaintiffs' Motion for Temporary Restraining Order

("Defs.' Mot."), ECF No. 21.  Upon careful consideration of the parties' submissions,[5] the Court

concludes for the following reasons that it must grant the defendants' motion to dismiss and deny

the plaintiffs' motion for a temporary restraining order as moot.

## I.    BACKGROUND

### A.    Statutory Background

"To implement its immigration policy, the Government must be able to decide (1) who

may enter the country and (2) who may stay here after entering."  Jennings v. Rodriguez, 583

---

[3] Because the plaintiffs' submissions are not paginated, unless otherwise indicated, all pincites to the plaintiffs' filings are to the automatically generated ECF Page ID number that appear at the top of each page of those filings, or to the page number as displayed in the .pdf file of the submission where no automatically generated ECF Page ID number is visible.

[4] The plaintiffs originally filed a motion for a temporary restraining order and preliminary injunction, see generally Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 2, but their amended motion only requests a temporary restraining order, see generally Pls.' Mot.  Because the parties agreed to fully brief the plaintiffs' amended motion for injunctive relief along with the defendants' motion to dismiss, the Court could treat the amended motion as a motion for a preliminary injunction, despite the plaintiffs' characterization of their requested relief.  However, as discussed below, the standards for each form of injunctive relief are the same and therefore the Court will refer to the plaintiffs' amended motion as a motion for a temporary restraining order.

[5] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiffs' Opposition to Defendants' Combined Motion to Dismiss and Reply in Support of Plaintiffs' Motion for Temporary Restraining Order ("Pls.' Opp'n"), ECF No. 25; (2) the Defendants' Reply in Further Support of Motion to Dismiss ("Defs.' Reply"), ECF No. 29; (3) the Declaration of Supervisory Detention and Deportation Officer Daniel Vanderploeg ("Romero-Hernández Decl."), ECF No. 23-1; (4) the Declaration of Supervisory Detention and Deportation Officer Richard R. Lall ("Leyva Decl."), ECF No. 23-3; and (5) the Declaration of Supervisory Detention and Deportation Officer Richard R. Lall ("Hoyos-Hernández Decl."), ECF No. 23-5.

U.S. 281, 286 (2018).  The Immigration and Naturalization Act ("INA") includes several

sections governing the classification of noncitizens seeking to enter the country and authorizing

procedures by which they may remain in the United States temporarily.  See 8 U.S.C. §§ 1225,

1226.  This matter involves two separate provisions governing the detention of noncitizens

pending removal proceedings.

The first section, 8 U.S.C. § 1225, applies to a noncitizen who is "present in" or "arrives

in the United States" but "who has not been admitted" and is thus considered "an applicant for

admission."  8 U.S.C. § 1225.  Pursuant to § 1225, "[a]pplicants for admission must 'be

inspected by immigration officers' to ensure that they may be admitted into the country

consistent with U.S. immigration law."  Jennings, 583 U.S. at 287 (quoting 8 U.S.C.

§ 1225(a)(3)).  Upon inspection, the inspecting officer must determine whether the applicant for

admission falls under § 1225(b)(1), which "applies to [noncitizens] initially determined to be

inadmissible due to fraud, misrepresentation, or lack of valid documentation[,]" id. at 287 (citing

8 U.S.C. § 1225(b)(1)(A)(i)), or instead under § 1225(b)(2), which "serves as a catchall

provision that applies to all applicants for admission not covered by § 1225(b)(1)[,]" id. (citing

8 U.S.C. §§ 1225(b)(2)(A), (B)), subject to certain exceptions not relevant to this matter.

Both § 1225(b)(1) and § 1225(b)(2) authorize detention of certain noncitizens under

different circumstances.  See id.  If a noncitizen is determined to fall under § 1225(b)(1), he or

she is subject to detention and expedited removal, i.e., "remov[al] from the United States without

further hearing or review unless" they desire to seek asylum and claim a credible fear of

persecution, id. § 1225(b)(1)(A)(i)–(ii), in which case he or she "shall be detained for further

consideration of [his or her] application for asylum[,]" id. § 1225(b)(1)(B)(ii).  On the other

hand, if a noncitizen is determined to fall under § 1225(b)(2), they are not subject to expedited

removal but rather standard removal procedures pursuant to § 1229, and are subject to mandatory detention pending those removal proceedings unless the examining immigration officer determines that the noncitizen is "clearly and beyond a doubt entitled to be admitted[,]" id. § 1225(b)(2)(A), but again subject to certain exceptions not relevant in this case, see id. § 1225(b)(2)(B).

Regardless of whether an applicant for admission falls under § 1225(b)(1) or § 1225(b)(2), the INA authorizes the Secretary of Homeland Security to temporarily parole applicants for admission "on a case-by-case basis for urgent humanitarian reasons or significant public benefit . . . ." 8 U.S.C. § 1182(d)(5)(A). Such "humanitarian parole," as it is known, does not constitute admission of the noncitizen into the United States, see id., "and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled" and his or her case reverts back to its pre-parole status, id. The Secretary has delegated his parole authority to component authorities within the DHS depending on the circumstances of the parole applicant. See 8 C.F.R. § 212.5. As another member of this Court has recently noted, "[t]he statute does not require the Secretary [or his delegees] to accept, consider, or grant applications for humanitarian parole[,]" and "[n]o statutory provision or regulation defines 'urgent humanitarian reasons' or 'significant public benefit.'" A.M.S. v. Edlow, 826 F. Supp. 3d 153, 158 (D.D.C. 2026).

The second section, 8 U.S.C. § 1226, authorizes the apprehension and detention of noncitizens "already in the country pending the outcome of removal proceedings." Jennings, 583 U.S. at 289. Specifically, § 1226(a) directs that, upon apprehension of the noncitizen pursuant to "a warrant issued by the Attorney General[,]" the Attorney General:

4

> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
>> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>> (B) conditional parole . . . .

8 U.S.C. § 1226. Thus, pursuant to § 1226, detention is discretionary, subject to exceptions for certain noncitizens that also are inapplicable in this case. See 8 U.S.C. § 1226(c). However, the Attorney General may revoke conditional parole "at any time" and rearrest and detain that noncitizen. Id. § 1226(b).

The distinction between conditional parole pursuant to § 1226(a) and humanitarian parole pursuant to § 1182(d)(5)(A) is at the heart of this case because the Cuban Adjustment Act, Pub. L. No. 89–732, 80 Stat. 1161 (1966), permits a noncitizen "who is physically present in the United States . . . [to] apply for adjustment of status to that of a lawful permanent resident[,]" 8 C.F.R. § 245.1(a), except if that noncitizen "was not admitted or paroled following inspection by an immigration officer[,]" id. § 245.1(b)(3). And, Circuit courts have consistently concluded that noncitizens who were processed as applicants for admission under the procedures set forth in § 1225 and granted humanitarian parole pursuant to § 1182(d)(5)(A) are eligible for adjustment of status, while noncitizens granted conditional parole pursuant to § 1226(a) are not. See Ortega-Cervantes v. Gonzales, 501 F.3d 1111, 1119 (9th Cir. 2007); Cruz-Miguel v. Holder, 650 F.3d 189, 198 (2d Cir. 2011); Castillo-Padilla v. U.S. Att'y Gen., 417 Fed. App'x 888, 891 (11th Cir. 2011); Delgado-Sobalvarro v. Att'y Gen. of U.S., 625 F.3d 782, 786 (3d Cir. 2010). However, even for those Cuban nationals eligible for adjustment of status, such adjustment remains within the discretion of the Attorney General. See 8 U.S.C. § 1255(a) (directing that "[t]he status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe . . .").

B.      **Factual Background**

The following allegations are derived from the plaintiffs' original Complaint or Amended Complaint, unless otherwise specified.[6]  The plaintiffs in this case are all Cuban nationals currently residing in the United States.  See Am. Compl. at 5.  Each of the plaintiffs entered the United States in 2022 and were apprehended and detained near the southern border or a port of entry into the United States, see Compl. at 7, 10, 13.  And, each plaintiff purportedly received a "Form I-220A[,]" see id., which is the standard order of release on personal recognizance issued to noncitizens processed pursuant to § 1226 and granted conditional parole pending their removal proceedings, see, e.g., Serrano v. Albarran, No. 25-cv-08408-EKL, 2025 WL 4110874, at *1 n.1 (N.D. Cal. Nov. 28, 2025) (taking judicial notice of the sample Form I-220A on the U.S. Immigration and Customs Enforcement's website).

The plaintiffs allege that following their release they have filed applications for adjustment of status under the Cuban Adjustment Act, but because their records reflect that they were granted conditional parole pursuant to § 1226—and not humanitarian parole pursuant to § 1182(d)(5)(A), as they contend was the only basis for their release—the "USCIS has failed to adjudicate [their] application[s,]" and thus they remain subject to revocation of their parole and removal from the United States.  Compl. at 8, 11; see id. at 14.  However, all of the plaintiffs' removal proceedings are ongoing and none of the plaintiffs have had their parole revoked or have otherwise been placed into immigration detention.  See Romero-Hernández Decl. ¶ 7;

---

[6] The Court relies on the factual allegations in both the original Complaint and the Amended Complaint because in amending the Complaint, the plaintiffs omitted much of the relevant factual background contained in the original. Thus, because "all factual allegations by pro se litigants, whether contained in the complaint or other filings in the matter, should be read together in considering whether to grant a dispositive motion[,]" the Court will consider factual allegations in both complaints.  Francis v. United States, No. 20-cv-1392 (RBW), 2022 WL 17146941, at *2 (D.D.C. Nov. 22, 2022) (Walton, J.) (citing Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999)).

6

Leyva Decl. ¶ 8; Hoyos-Hernández Decl. ¶¶ 7–8;[7] see also Min. Order (Dec. 18, 2025) (requiring the government to notify the Court in writing prior to taking any action to change the plaintiffs' current removal statuses or detain them).

**C.      Procedural Background**

The plaintiffs filed their Complaint in this case on July 21, 2025, see Compl. at 1, along with their original motion for a temporary restraining order and a preliminary injunction, see generally Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 2.  On July 22, 2025, the Court ordered counsel for the defendants to enter a notice of appearance, see Minute ("Min.") Order (July 22, 2025), and on July 28, 2025, the Court held a scheduling conference, see Min. Entry (Julu 28, 2025), during which counsel for the defendants represented that there were no current plans to take any action to change the plaintiffs' statuses and indicated that the defendants expected to file a combined opposition to the plaintiffs' motion for injunctive relief and a motion to dismiss this case, see Order at 2 (July 28, 2025), ECF No. 6. Thus, the Court held the plaintiffs' motion for injunctive relief in abeyance and entered a briefing schedule for the defendants' motion to dismiss and the plaintiffs' motion for injunctive relief. See id. at 1.  The Court further ordered that "if the defendants intend to detain the plaintiffs or otherwise change their removal statuses before the next scheduled status conference, the defendants shall forthwith notify the Court in writing of the change of their position."  Id. at 2.

Consistent with the briefing schedule issued by the Court, the defendants filed their combined opposition to the plaintiffs' motion for injunctive relief and motion to dismiss on August 29, 2025, see Defendants' Combined Motion to Dismiss and Memorandum in Support

---

[7] The "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case[,]" Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), and in the absence of any objection by the plaintiffs, the Court will consider the declarations filed by the defendants because they do not attack the factual allegations made in the plaintiffs' submissions.

Thereof and Opposition to Plaintiffs' Motion for Preliminary Injunction at 1, ECF No. 10, and on September 26, 2025, the plaintiffs filed their combined reply in support of their motion for injunctive relief and opposition to the defendants' motion to dismiss, see Plaintiffs' Opposition to Defendants' Combined Motion to Dismiss at 1, ECF No. 12.

Then, on November 25, 2025, the defendants represented that they had conferred with the plaintiffs regarding the plaintiffs' desire to amend their Complaint and consented to such amendment, see Motion for Extension of Time to File at 3, ECF No. 14, and, on December 4, 2025, the plaintiffs filed their Amended Complaint, see Am. Compl. at 1, along with an amended motion for a temporary restraining order, see Pls.' Mot. at 1.

On December 10, 2025, due to the filing of the plaintiffs' Amended Complaint, the Court denied the plaintiffs' original motion for injunctive relief and the defendants' motion to dismiss the original Complaint as moot and ordered the parties to confer regarding a schedule for the briefing of the plaintiffs' amended motion and the defendants' expected motion to dismiss the Amended Complaint.  See Order at 1–2 (Dec. 10, 2025), ECF No. 19.  On December 18, 2025, the Court granted the parties' joint motion for a scheduling order, see Min. Order (Dec. 18, 2025), and pursuant to that Order, on January 29, 2026, the defendants' filed their combined opposition to the plaintiffs' amended motion for a temporary restraining order and motion to dismiss the plaintiffs' Amended Complaint, see Defs.' Mot. at 1.  On February 25, 2026, the plaintiffs filed their combined reply in support of their amended motion for a temporary restraining order and opposition to the defendants' motion to dismiss the Amended Complaint, see Pls.' Opp'n at 1, and the defendants filed their reply in support of their motion to dismiss on April 13, 2026, see Defs.' Reply at 1.

## II.    STANDARDS OF REVIEW

### A.    Federal Rule of Civil Procedure 12(b)(1)

"Federal [district] courts are courts of limited jurisdiction[,]" Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and therefore, "[a] motion for dismissal under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction[,]'" Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)).  Thus, the Court is obligated to dismiss a claim if it "lack[s] . . . subject matter jurisdiction[.]"  Fed. R. Civ. P. 12(b)(1).  And, because "[i]t is to be presumed that a cause lies outside [the Court's] limited jurisdiction," Kokkonen, 511 U.S. at 377, the plaintiff bears the burden of establishing by a preponderance of the evidence that a district court has subject matter jurisdiction, see Nurse v. Sec'y of Air Force, 231 F. Supp. 2d 323, 326 (D.D.C. 2002) (Walton, J.) (citations omitted).

In deciding a motion to dismiss based on lack of subject matter jurisdiction, the Court "need not limit itself to the allegations of the complaint."  Grand Lodge of the Fraternal Ord. of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001) (citation omitted).  Rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case."  Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see also Jerome Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005).  Additionally, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'"  Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).  However, "the [p]laintiff's factual allegations

in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13–14 (alterations in original) (citation and internal quotation marks omitted).  And, the Court "need not accept bare legal conclusions nor unsupported inferences." Campaign Legal Ctr. v. Fed. Election Comm'n, No. 22-cv-3319 (CRC), 2024 WL 4263853, at *5 (D.D.C. Sept. 23, 2024) (citing Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002)).

**B.      Federal Rule of Civil Procedure 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests whether a complaint has properly "state[d] a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable interference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted).  While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555).  Also, the Court need not "accept legal conclusions cast as factual

10

allegations[,]" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint . . . ." Hettinga, 677 F.3d at 476. The Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

**C.      Motions for a Temporary Restraining Order and Preliminary Injunction**

Temporary restraining orders or preliminary injunctions are extraordinary remedies designed to prevent serious and imminent harm in exigent circumstances, and "should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." Cobell v. Norton, 391 F.3d 251, 258 (D.C. Cir. 2004); see Dellinger v. Bessent, 766 F. Supp. 3d 57, 62 (D.D.C. 2025) (noting the same in regards to a temporary restraining order) (citing Sibley v. Obama, 810 F. Supp. 2d 309, 310 (D.D.C. 2011)). Thus, a party moving for a temporary restraining order or a preliminary injunction must show "(1) a substantial likelihood of success on the merits, (2) that [he or she] would suffer irreparable injury if the injunction [or restraining order] were not granted, (3) that an injunction [or restraining order] would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction[ or restraining order]." Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006); see Hall v. Johnson, 599 F. Supp. 2d 1, 3 n.2 (D.D.C. 2009) (explaining that the standards for determining whether a party is entitled to a temporary restraining order or preliminary injunction are the same).[8] In seeking either a temporary restraining order or "a preliminary injunction, the movant has the burden to show that all four

---

[8] When considering a motion for a temporary restraining order, "[a] court also considers the underlying purpose of a TRO—preserving the status quo and preventing irreparable harm until it has an opportunity to rule on the merits." New Mexico v. Musk, 769 F. Supp. 3d 1, 5 (D.D.C. 2025) (internal quotation marks and citations omitted).

factors, taken together, weigh in favor of the injunction[ or restraining order]." Abdullah v. Obama, 753 F.3d 193, 197 (D.C. Cir. 2014) (internal quotation marks omitted). However, "[w]hen the defendant is the government, factors (3) and (4) merge." Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv., 64 F.4th 1354, 1364 (D.C. Cir. 2023).

Although previously "[t]he four factors [were] typically [ ] evaluated on a 'sliding scale[]'" in this Circuit, Davis v. Pension Ben. Guar. Corp., 571 F.3d 1288, 1291 (D.C. Cir. 2009), the Supreme Court's decision in Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008), cast doubt on the propriety of that approach, see Save Jobs USA v. U.S. Dep't of Homeland Sec., 105 F. Supp. 3d 108, 112 (D.D.C. 2015) (noting that "[i]t is not clear whether th[e sliding scale] approach survives after Winter, which suggested that a likelihood of success on the merits must always be shown"). Indeed, "the [District of Columbia] Circuit has suggested that a positive showing on all four preliminary injunction factors may be required." Holmes v. Fed. Election Comm'n, 71 F. Supp. 3d 178, 183 n.4 (D.D.C. 2014). And at least some of this Circuit's judges have "read Winter at least to suggest[—]if not to hold[—]'that a likelihood of success is an independent, freestanding requirement for a preliminary injunction[.]'" Sherley v. Sebelius, 644 F.3d 388, 393 (D.C. Cir. 2011) (citing Davis, 571 F.3d at 1296 (Kavanaugh, J., concurring)). However, although the District of Columbia Circuit has noted that "[i]t is questionable that the sliding scale approach remains good law" post-Winter, it has not decided that question. See Clevinger v. Advocacy Holdings, Inc., 134 F.4th 1230, 1235 (D.C. Cir. 2025).

Similarly, Winter "makes clear[] [that] a mere 'possibility' of irreparable harm will not suffice." Cal. Ass'n of Priv. Postsecondary Schs. v. DeVos, 344 F. Supp. 3d 158, 167 (D.D.C. 2018) (quoting Winter, 555 U.S. at 22). Indeed, "a showing that irreparable injury is 'likely' is the sine qua non for obtaining a preliminary injunction[ or a temporary restraining order]—it is

12

what justifies the extraordinary remedy of granting relief before the parties have had the opportunity fully to develop the evidence and fully to present their respective cases." Achagzai v. Broad. Bd. of Governors, No. 14-cv-768 (RDM), 2016 WL 471274, at *3–4 (D.D.C. Feb. 8, 2016). Therefore, "[a] movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction[ or a temporary restraining order], even if the other three factors entering the calculus merit such relief." Chaplaincy of Full Gospel Churches, 454 F.3d at 297.

### D.   Pro Se Plaintiffs

In applying the above legal frameworks, the Court is mindful of the fact that the plaintiffs are proceeding in this matter pro se. This appreciation is required because the pleadings of pro se parties are "to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). Furthermore, all factual allegations by pro se litigants, whether contained in the complaint or other filings in the matter, should be read "together and as a whole." Hunter v. Wash. Metro. Area Transit Auth., 485 F. Supp. 3d 65, 73 (D.D.C. 2020) (citing Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999)). Nonetheless, a "pro se complaint, like any other, must present a claim upon which relief can be granted by the [C]ourt[,]" Crisafi v. Holland, 655 F.2d 1305, 1308 (D.C. Cir. 1981), and, when faced with a dispositive motion, pro se litigants "must comply with the Federal Rules of Civil Procedure and this Court's local rules[.]" Hedrick v. Fed. Bureau of Investigation, 216 F. Supp. 3d 84, 93 (D.D.C. 2016) (citations omitted); see McNeil v. United States, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

13

### III.    ANALYSIS

The defendants raise several arguments in their motion to dismiss, including that the Court lacks subject matter jurisdiction over the plaintiffs' claims because the decisions as to whether to grant humanitarian parole to non-United States citizens subject to removal from the country and to adjust status are discretionary, and thus: (1) the INA precludes judicial review of those decisions and; (2) the Court has no jurisdiction to compel the defendants to grant the plaintiffs the relief they are requesting, i.e., to be granted humanitarian parole and adjustment of status, see Defs.' Mot. at 15–21.  Because the Court agrees that it lacks subject matter jurisdiction to provide the plaintiffs their requested relief, the Court need not address the defendants' alternative arguments for dismissal.[9]

### A.    Whether the Court Has Subject Matter Jurisdiction Over the Plaintiffs' Claims in this Case and to Grant the Requested Relief

The plaintiffs assert that the Court has subject matter jurisdiction over their claims pursuant to the Mandamus Act, the APA, the federal question statute, 28 U.S.C. § 1331; the Declaratory Judgment Act, and the Due Process Clause of the Fifth Amendment to the United States Constitution.  See Am. Compl. at 3–4.  As an initial matter, the Court notes that the Declaratory Judgment Act does not provide an independent basis for jurisdiction or a distinct cause of action, see C&E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth., 310 F.3d 197, 201

---

[9] The defendants also request that the Court excuse them from complying with Local Rule 7(n)(1), see Defs.' Mot. at 26 n.8, which provides that "[i]n cases involving the judicial review of administrative agency actions, unless otherwise ordered by the Court, the agency must file a certified list of the contents of the administrative record with the Court . . . simultaneously with the filing of a dispositive motion[,]" LCvR 7(n)(1).  The defendants posit that compliance with 7(n)(1) is unnecessary here because they "argue[] that judicial review is not available in this case which is a threshold legal issue that does not require review of the administrative record[,]" Defs.' Mot. at 26 n.8, and because, in moving to dismiss, the defendants "rely[] entirely on the facts alleged in the Complaint, incorporated by reference in the Complaint, or subject to judicial notice[,]" id.  The plaintiffs have not responded to the defendants' request.  See generally Pls.' Opp'n.  Because the defendants' arguments contend that the plaintiffs' claims fail for lack of subject matter jurisdiction or as a matter of law, and because, as indicated previously, the Court may properly take judicial notice of the remaining information relevant to the defendants' motion to dismiss, the Court concludes that the administrative record is not necessary for the resolution of the pending motions, and grants the defendants' motion to the extent it seeks relief from Local Rule 7(n)(1).

(D.C. Cir. 2002), and the federal question statute provides for subject matter jurisdiction only in cases "arising under" federal law, i.e., the Constitution or a federal statute such as the APA, 28 U.S.C. § 1331.

### 1. The Plaintiffs' APA, Mandamus, and Constitutional Claims

The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." Fed. Commc'ns Comm'n v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009). The APA requires courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). It also requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are (1) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," id. § 706(2)(A); (2) "contrary to constitutional right, power, privilege, or immunity," id. § 706(2)(B); or (3) "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," id. § 706(2)(C). However, "the only agency action that can be compelled under the APA is action legally required . . . . Thus, a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 63–64 (2004) (emphasis in original).

The Mandamus Act also provides subject matter jurisdiction to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff[s,]" 28 U.S.C. § 1361, but mandamus relief is proper "only if: (1) the plaintiff[s] ha[ve] a clear right to relief; (2) the defendant[s] ha[ve] a clear duty to act; and (3) there is no other adequate remedy available to [the] plaintiff[s.]" In re Nat'l Nurses United, 47 F.4th 746, 752 n.4 (D.C. Cir. 2022) (quoting Muthana v. Pompeo, 985 F.3d 893, 910 (D.C. Cir. 2021)). Thus, as with § 706(1) of the APA, plaintiffs may only obtain mandamus relief "to compel performance of 'a clear nondiscretionary duty.'" Pittston Coal Grp. v. Sebben, 488 U.S. 105, 121 (1988) (quoting

15

Heckler v. Ringer, 466 U.S. 602, 616 (1984)); see also Viet. Veterans of Am. v. Shinseki, 599

F.3d 654, 659 n.6 (D.C. Cir. 2010) ("[T]he standards for obtaining relief [under the Mandamus

Act and the APA] are essentially the same.").

In determining whether it has subject matter jurisdiction under these statutory provisions,

the Court is mindful of "the presumption favoring judicial review of administrative action."

Make the Rd. N.Y. v. Wolf, 962 F.3d 612, 623 (D.C. Cir. 2020) (quoting Guerrero-Lasprilla v.

Barr, 589 U.S. 221, 229 (2020)).  However, the Court must also determine whether any statute—

here, the INA—contains a jurisdiction-stripping provision that provides "'clear and convincing

evidence' of congressional intent to preclude judicial review." Id. at 624.  This determination is

required because the APA does not apply, and therefore does not provide a basis for subject

matter jurisdiction under the federal question statute, where a "statute[] preclude[s] judicial

review[.]"  5 U.S.C. § 701(a)(1).

Relevant here, 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review of "any other

decision or action of the Attorney General or the Secretary of Homeland Security the authority

for which is specified under this subchapter to be in the discretion of the Attorney General or the

Secretary of Homeland Security[.]"  8 U.S.C. § 1252(a)(2)(B))(ii).  The District of Columbia

Circuit has detailed a two-part test to determine whether § 1252(a)(2)(B)(ii) bars judicial review

of a particular action.  See iTech U.S., Inc. v. Renaud, 5 F.4th 59, 62 (D.C. Cir. 2021).  First, the

Court must determine whether the particular action or actions at issue in this case "could fall

under clause (ii)'s umbrella," or in other words, whether that action constitutes "any other

decision or action" within the meaning of the statute. Id. at 62–63.  If so, the Court must then

determine whether the applicable statute specifies that the challenged action or actions are within

"the Secretary's discretion." Id. at 62.  If the Court ultimately concludes that the statute assigns

16

the challenged action to the Secretary's discretion, § 1252(a)(2)(B)(ii) precludes judicial review of that action.  See id.

As indicated previously, the plaintiffs argue that the defendants unlawfully determined that the plaintiffs were subject to § 1226 rather than § 1225 as applicants for admission, and that based on this misclassification, the defendants: (1) "fail[ed] to perform the mandatory parole determination required by [§ 1182](d)(5)(A)[;]" and (2) "created immigration records that are defective, incomplete, and legally invalid[,]" by releasing the plaintiffs pursuant to a Form I-220A, rather than by issuing them documentation reflecting that they were granted humanitarian parole pursuant to § 1182(d)(5)(A).  Am. Compl. at 2.  At bottom, the plaintiffs argue that because the defendants had no legal authority to grant them conditional parole subject to § 1226 (because they should have been classified as applicants for admission pursuant to § 1225), they could only be released from mandatory detention—if at all—via humanitarian parole.  See id. at 7.  Thus, the plaintiffs seek to have the Court, inter alia, declare the defendants' actions unlawful and compel the defendants to:

> (a) [c]orrect [the p]laintiffs' custody and entry records to reflect processing under [§ 1225(b)] and to issue the parole documentation required by 8 U.S.C. § 1182(d)(5)(A); (b) [r]emove all references to [§ 1226(a)] and Form I-220A from [the p]laintiffs' records . . . ; [a]djudicate [the p]laintiffs' pending or denied applications for adjustment of status under the Cuban Adjustment Act . . . ; [and] (d) [c]ease the use of any policy, memorandum, or internal practice that conflicts with the mandatory statutory framework governing applicants for admission under [§ 1225].

Id. at 17–18.

And, as previously noted, the defendants argue that the Court lacks subject matter jurisdiction over the plaintiffs' claims and cannot provide their requested relief.  Specifically, the defendants argue, inter alia, that because the acts the plaintiffs seek to have the Court compel— i.e., the Secretary's determination as to whether to grant a noncitizen humanitarian parole and the

17

adjustment of their status under the Cuban Adjustment Act—are committed to the discretion of the Secretary or Attorney General, "the INA does not permit the Court to [order the defendants to] do either of those things." Defs.' Mot. at 18. The Court agrees. Section 1182(d)(5)(A), which governs humanitarian parole to noncitizens processed pursuant to § 1225, clearly provides that the Secretary "may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States . . . ." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). As another member of this Court recently noted, "[t]he provision radiates with words of discretion." 826 F. Supp. 3d at 169. Similarly, pursuant to 8 U.S.C. § 1255(a):

> The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence . . . .

8 U.S.C. § 1255(a) (emphasis added).

The plaintiffs counter that they are not in fact challenging the Secretary's denial of humanitarian parole pursuant to § 1182(d)(5)(A), but instead challenge the defendants' misclassification of the plaintiffs under § 1226(a)—instead of § 1225—which is the "failure to invoke the statute that authorizes parole at all." Pls.' Opp'n at 10. Therefore, according to the plaintiffs, because the Secretary never invoked § 1182(d)(5)(A), "no discretionary act occurred[,]" and thus § 1252(a)(2)(B)(ii) is inapplicable to their claims. Id. at 6. The plaintiffs further argue that the government has recently reversed its own position regarding the applicability of § 1225, rather than § 1226(a), to noncitizens already in the United States, in addition to those who present themselves at the border or ports of entry, and thus the government now concedes that § 1225 is "the only provision that is possibly applicable in circumstances like

18

these." Id. at 7 (quoting Labrada-Hechavarria v. U.S. Att'y Gen., Nos. 23-13664, 24-10645, 2026 WL 496486, at *2 (11th Cir. Feb. 23, 2026)).  Simultaneously, the plaintiffs seek to emphasize that they "do not ask this Court to grant parole or admit them into the United States." Pls.' Opp'n at 5.

While the plaintiffs characterize their claims and prayer for relief as narrowly challenging the defendants' failure to invoke the appropriate legal authority for releasing them, the Amended Complaint's request for relief is significantly broader and seeks to have the Court compel the defendants to not only reclassify the plaintiffs under § 1225, but to also grant them humanitarian parole pursuant to § 1182(d)(5)(A). See Am. Compl. at 17 (requesting that the Court compel the defendants to issue to the plaintiffs "the parole documentation required by 8 U.S.C. § 1182(d)(5)(A) . . . .").  That prayer for relief is consistent with the crux of the plaintiffs' argument, which appears to be that because the plaintiffs were released from detention, that release—although predicated on what the plaintiffs argue was the incorrect statutory provision—must now constitute a grant of humanitarian parole and, thus, their records must reflect that they were granted such parole pursuant to § 1182(d)(5)(A).

Moreover, to the extent that the plaintiffs argue that their requested relief is narrower and that they only seek to declare unlawful the defendants' actions to parole them pursuant to § 1226, that characterization appears belied by the plaintiffs' requested relief in both the Amended Complaint and their amended motion for a temporary restraining order.  The Court so finds because, even assuming arguendo that the Court could declare that the defendants' initial classification of the plaintiffs was unlawful and that they should now be considered applicants for admission pursuant to § 1225, this provision begins with a presumption of mandatory detention, see 8 U.S.C. § 1225(b), subject only to the Secretary's discretion to grant

19

humanitarian parole "for urgent humanitarian reasons or significant public benefit[,]" 8 U.S.C. § 1182(d)(5)(A). Therefore, contrary to the plaintiffs' position, a court order holding unlawful the defendants' purported misclassification of the plaintiffs would not convert the plaintiffs' conditional parole under § 1226(a) into a grant of humanitarian parole under § 1182(d)(5)(A), which is a predicate to adjustment of their status under the Cuban Adjustment Act. Rather, reclassification under § 1225 would trigger mandatory detention, and would at best allow the plaintiffs to seek humanitarian parole while in detention, subject to the discretion of the Secretary. See Molina-Cantero v. Dep't of Homeland Sec., No. 2:25-cv-549-KCD-NPM, 2026 WL 83954, at *3 (M.D. Fl. Jan. 12, 2026) (noting that "[i]f the Government lacked the authority to release [the plaintiff] under § 1226, as she vigorously argues, then her release was unauthorized[,]" and the remedy "is not to retroactively bestow a discretionary benefit she never received[,]" but "to return to the status quo ante—which, under § 1225(b), is mandatory detention"). However, the plaintiffs simultaneously seek to enjoin the defendants from taking any action to "detain[] or remov[e]" them pursuant to their classification under § 1226, see Pls.' Mot. at 4, and the Court will not construe the plaintiffs' request for relief as a request for relief that would subject them to mandatory detention considering that they are not currently detained and obviously do not desire to be detained.

To be sure, if the plaintiffs are detained by the government pending their removal proceedings, they remain free to challenge the defendants' classification through habeas corpus in the district court in which they are detained, and thus the legal basis and procedure by which the defendants may revoke their parole, should the defendants argue that the plaintiffs should be considered to have been detained pursuant to § 1225 when they entered the United States. See, e.g., Barco Mercardo v. Francis, 811 F. Supp. 3d 487, 494 (S.D.N.Y. 2025) (collecting habeas

corpus cases challenging the government's new interpretation of the interplay between § 1225 and § 1226).  And, should they seek to raise legal or constitutional claims upon the conclusion of their removal proceedings, they may do so "upon a petition for review filed with an appropriate court of appeals . . . ."  8 U.S.C. § 1252(a)(2)(D).  However, for the reasons indicated, the Court concludes that it is precluded from providing the plaintiffs their requested relief and therefore must dismiss their APA, Mandamus Act, and constitutional claims.

### 2.  The Plaintiffs' Declaratory Judgment Act Claim

Having concluded that the Court lacks subject matter jurisdiction over the plaintiffs' other claims, the Court now addresses the plaintiffs' request for declaratory relief pursuant to the Declaratory Judgment Act.  However the plaintiffs' Declaratory Judgment Act claim fails because the Declaratory Judgment Act does not provide an independent basis for jurisdiction or a distinct cause of action, see C&E Servs., Inc. of Wash., 310 F.3d at 201, and thus, "just like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement[,]" California v. Texas, 593 U.S. 659, 672 (2021) (citing MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126–27 (2007)).  Therefore, having concluded that the Court lacks jurisdiction over the plaintiffs' APA, Mandamus, and constitutional claims, the Court must also dismiss the plaintiffs' claim pursuant to the Declaratory Judgment Act.

### IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendants' motion to dismiss the plaintiffs' Amended Complaint.  And, because the Court must grant the defendants' motion to dismiss the plaintiffs' Amended Complaint, the Court must deny as moot the plaintiffs' motion for a temporary restraining order.

**SO ORDERED** this 10th day of July, 2026.[10]

REGGIE B. WALTON
United States District Judge

---

[10] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.